Markman, J.
Defendant’s first trial was declared a mistrial because of a hung jury. Following defendant’s second jury trial, he was convicted of assault with intent to murder and possession of a firearm during the commission of a felony. On appeal, the Court of Appeals reversed defendant’s convictions, concluding inter alia that defendant had been improperly impeached with his silence when the prosecutor made repeated references to his failure to testify at his first trial. We granted leave requesting that the parties address: (1) whether the prosecutor’s impeachment of defendant’s testimony using defendant’s failure to testify at his earlier trial violated defendant’s Fifth Amendment right against self-incrimination and (2) whether prior consistent statements by the complainant were admissible under MRE 801(d)(1)(B). People v Clary, 491 Mich 933 (2012).
*263 Because we believe that the prosecutor’s impeachment of defendant’s testimony with his failure to testify at his earlier trial was not improper, we reverse the judgment of the Court of Appeals to that extent. The Court of Appeals also addressed whether the prosecutor’s references to defendant’s post-arrest, post-Miranda silence were improper and held that reversal was not required because the record was unclear regarding whether the post-arrest silence also constituted post-Miranda silence. However, our review of the transcript of defendant’s arraignment indicates that defendant was informed of his Miranda rights at his arraignment, and thus we hold that the prosecutor’s references to defendant’s post-arrest, post-Miranda silence at trial plainly violated Doyle v Ohio, 426 US 610, 618-619; 96 S Ct 2240; 49 L Ed 2d 91 (1976). Accordingly, we do not disturb the ultimate disposition reached by the Court of Appeals, i.e., the reversal of defendant’s convictions. We otherwise vacate this Court’s June 6, 2012 order granting leave to appeal and deny the prosecutor’s application for leave to appeal because we are not persuaded that this Court should review the remaining question presented. Finally, we remand this case to the trial court for further proceedings consistent with this opinion. If defendant chooses to testify at a third trial, the prosecutor may again refer to defendant’s failure to testify at his first trial without violating defendant’s constitutional rights.
I. FACTS AND HISTORY
At defendant’s first trial, the complainant testified that defendant shot him. Defendant did not testify. The trial was eventually declared a mistrial because of a hung jury. At defendant’s second trial, the complainant again testified that defendant shot him, but this time *264 defendant testified that he did not shoot the complainant. The prosecutor impeached defendant’s testimony by asking him why he had not provided that testimony at the first trial.[1] The prosecutor also commented on defendant’s silence at his first trial during closing arguments.[2] Following defendant’s second jury trial, defendant was convicted of assault with intent to murder, MCL 750.83, and possession of a firearm during the commission of a felony, MCL 750.227b. The Court of Appeals reversed defendant’s convictions, concluding, among other things, that defendant was improperly impeached with his silence when the prosecutor made several references to defendant’s failure to testify at his first trial. People v Clary, unpublished opinion per curiam of the Court of Appeals, issued February 16, 2012 (Docket No. 301906). We granted the prosecutor’s application for leave to appeal. Clary, 491 Mich 933.
II. STANDARD OF REVIEW
Whether defendant was improperly impeached with his silence is a question of law that we review de novo. People v Borgne, 483 Mich 178, 184; 768 NW2d 290 (2009).
III. ANALYSIS
A. BACKGROUND
The Fifth Amendment of the United States Constitution provides that “[n]o person shall... be compelled *265 in any criminal case to be a witness against himself. . . US Const, Am V See also Const 1963, art 1, § 17. The Fifth Amendment has been made applicable to the states through the Due Process Clause of the Fourteenth Amendment. Malloy v Hogan, 378 US 1, 3; 84 S Ct 1489; 12 L Ed 2d 653 (1964). Pursuant to Miranda v Arizona, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966), in order to protect the privilege against compelled self-incrimination during custodial police interrogations, the suspect “must be warned that he has a right to remain silent [and] that any statement he does make may be used as evidence against him . . . .” The United States Supreme Court has held that “the Fifth Amendment, in its direct application to the Federal Government, and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused’s silence [at trial] or instructions by the court that such silence is evidence of guilt.” Griffin v California, 380 US 609, 615; 85 S Ct 1229; 14 L Ed 2d 106 (1965). That is, the Fifth Amendment prohibits using a defendant’s failure to take the stand as substantive evidence of guilt. Id. The Court has also held that “ ‘[w]hen a person under arrest is informed, as Miranda requires, that he may remain silent, [and] that anything he says may be used against him,’ ” “it would be fundamentally unfair and a deprivation of due process to allow the arrested person’s silence [at the time of his arrest] to be used to impeach an explanation subsequently offered at trial.” Doyle, 426 US at 618-619 (citation omitted); see also Borgne, 483 Mich at 186-188; People v Shafier, 483 Mich 205, 212-214; 768 NW2d 305 (2009).[3]
*266 However, the United States Supreme Court has also held that “the use of prearrest silence to impeach a defendant’s credibility violates [n]either the Fifth [n]or the Fourteenth Amendment to the Constitution.” Jenkins v Anderson, 447 US 231, 232, 238, 240; 100 S Ct 2124; 65 L Ed 2d 86 (1980); see also People v Cetlinski (After Remand), 435 Mich 742, 757; 460 NW2d 534 (1990) (“[N] either the Fifth Amendment nor the Michigan Constitution preclude^] the use of prearrest silence for impeachment purposes.”). Moreover, it has also held that “[i]n the absence of the sort of affirmative assurances embodied in the Miranda warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand.” Fletcher v Weir, 455 US 603, 607; 102 S Ct 1309; 71 L Ed 2d 490 (1982). Finally, it has held that “the Fifth Amendment is not violated when a defendant who testifies in his own defense is impeached with his prior silence” at his first trial. Jenkins, 447 US at 235, citing Raffel v United States, 271 US 494; 46 S Ct 566; 70 L Ed 1054 (1926).
B. RAFFEL AND STEWART
In Raffel, 271 US at 496, 499, the United States Supreme Court held that it was not “error to require the defendant, Raffel, offering himself as a witness upon the second trial, to disclose that he had not testified as a witness in his own behalf upon the first trial.”
*267 The immunity from giving testimony is one which the defendant may waive by offering himself as a witness. When he takes the stand in his own behalf, he does so as any other witness, and within the limits of the appropriate rules he may be cross-examined as to the facts in issue. He may be examined for the purpose of impeaching his credibility. His failure to deny or explain evidence of incriminating circumstances of which he may have knowledge, may be the basis of adverse inference, and the jury may be so instructed.[4] His waiver is not partial; having once cast aside the cloak of immunity, he may not resume it at will, whenever cross-examination may be inconvenient or embarrassing.
If, therefore, the questions asked of the defendant were logically relevant, and competent within the scope of the rules of cross-examination, they were proper questions .... [Id. at 496-497 (citations omitted).]
The Court then held that asking the defendant about his silence at his first trial was logically relevant and competent within the scope of the general rules of cross-examination:
[W]e do not think the questions asked of him were irrelevant or incompetent. For if the cross-examination had revealed that the real reason for the defendant’s failure to *268 contradict the government’s testimony on the first trial was a lack of faith in the truth or probability of his own story, his answers would have a bearing on his credibility and on the truth of his own testimony in chief.[5]
It is elementary that a witness who upon direct examination denies making statements relevant to the issue, may be cross-examined with respect to conduct on his part inconsistent with this denial. The value of such testimony, as is always the case with cross-examination, must depend upon the nature of the answers elicited; and their weight is for the jury. But we cannot say that such questions are improper cross-examination, although the trial judge might appropriately instruct the jury that the failure of the defendant to take the stand in his own behalf is not in itself to be taken as an admission of the truth of the testimony which he did not deny. [Id. at 497-498.][6]
*269 In summary, the Court held:
The safeguards against self-incrimination are for the benefit of those who do not wish to become witnesses in their own behalf and not for those who do. There is a sound policy in requiring the accused who offers himself as a witness to do so without reservation, as does any other witness. We can discern nothing in the policy of the law against self-incrimination which would require the extension of immunity to any trial or to any tribunal other than that in which the defendant preserves it by refusing to testify. [Id. at 499.]
We are not persuaded by the Court of Appeals’ attempt to distinguish Raffel. The Court of Appeals stated, “Unlike the defendant in Raffel, defendant in this case did not contradict the testimony of a witness offered at both his first and second trial.” Clary, unpub op at 8. We respectfully disagree. In both Raffel and the instant case, the defendant contradicted the testimony *270 of a witness offered at both the first and second trials. In Raffel, the defendant contradicted the testimony of a government agent who testified that the defendant had made admissions of guilt, and in the instant case, defendant contradicted the testimony of the complainant who testified that defendant shot him.
We are equally unpersuaded by the Court of Appeals’ conclusion that the instant case is more like Stewart v United States, 366 US 1; 81 S Ct 941; 6 L Ed 2d 84 (1961). Unlike in Raffel and the instant case, in Stewart the defendant did not contradict the testimony of a witness offered at both his first and second trials. As Stewart, 366 US at 5-6, explained:
The Raffel case . .. involved a situation in which Raffel had sat silent at his first trial in the face of testimony by a government agent that Raffel had previously made admissions pointing to his guilt. On a second trial, Raffel took the stand and denied the truth of this same testimony offered by the same witness. Under these circumstances, this Court held that Raffel’s silence at the first trial could be shown in order to discredit his testimony at the second trial on the theory that the silence itself constituted an admission as to the truth of the agent’s testimony. The result was that Raffel’s silence at the first trial was held properly admitted to impeach the specific testimony he offered at the second trial. Here, on the other hand, the defendant’s entire “testimony” comprised nothing more than “gibberish without meaning” with the result that there was no specific testimony to impeach.
This “gibberish” was apparently offered to demonstrate that the defendant was insane, which was the defendant’s chief defense at all three of his trials, and not to contradict the testimony of any witness. The United States Supreme Court held that because the defendant’s silence was not used for impeachment purposes, it was not admissible under Raffel. In this case, however, defendant’s silence was clearly used for impeach *271 ment purposes and, thus, it is admissible under Raffel.[7] We therefore hold that defendant was not improperly impeached with his silence when the prosecutor made repeated references to his failure to testify at his first trial. Accordingly, if defendant chooses to testify at a third trial, the prosecutor may again refer to defendant’s failure to testify at his first trial without violating defendant’s constitutional rights.[8]
C. DOYLE AND JENKINS
However, the prosecutor may not again refer to defendant’s post-arrest, post -Miranda silence with the police because to do so would clearly violate Doyle, 426 US at 618-619, which prohibits the admission of post-arrest, post -Miranda silence with the police. At defen *272 dant’s second trial, the prosecutor impeached defendant by asking him why, after he was arrested and arraigned, he had not told the police that he did not shoot the complainant. The prosecutor also referred to this silence during her closing argument. The Court of Appeals held that there was no Doyle violation because “[a]fter reviewing the record, it is unclear whether the post-arrest silence referenced by the prosecutor was also post -Miranda silence.” Clary, unpub op at 5. This Court subsequently granted defendant’s motion to consider the transcript of defendant’s arraignment, which shows that defendant had been informed of his Miranda rights at his arraignment. Clary, 821 NW2d 314 (Mich, 2012). Given this new information, it seems clear that the prosecutor’s references to defendant’s post-arrest, post -Miranda silence with the police violated Doyle. Accordingly, we hold that if there is a third trial, defendant’s post-arrest, post-Miranda silence with the police is inadmissible.
Defendant argues that there is a tension between Raffel and Doyle because while Doyle holds that post-Miranda silence is admissible, Raffel holds that silence at an earlier trial is admissible to impeach a defendant who testifies at a subsequent trial, even though this silence is also post -Miranda silence. Although we recognize this tension, we also recognize that Raffel has not been overruled by Doyle or by any other United States Supreme Court decision. Indeed, Doyle expressly held that it was “unnecessary” to address in that case the constitutionality of a prosecutor’s inquiry into silence after the time of arrest because that later silence “present[s] different considerations . . . .” Doyle, 426 US at 616 n 6. Specifically, Doyle explained:
In addition, error of constitutional dimension is asserted because each petitioner was cross-examined as to post- *273 arrest, preliminary hearing, and general pretrial silence when he testified as a defense witness at the other petitioner’s trial. These averments of error present different considerations from those implicated by cross-examining petitioners as defendants as to their silence after receiving Miranda warnings at the time of arrest.[9] In view of our disposition of this case we find it unnecessary to reach these additional issues. [Id. (emphasis omitted).]
Therefore, it appears that Doyle’s rule prohibiting the admission of post -Miranda silence applies to silence at the time of arrest, while Raffel’s rule permitting the admission of post-Miranda silence applies to silence at an earlier trial when the defendant takes the stand at a subsequent. trial. This conclusion is further underscored by the fact that after Doyle was decided, the United States Supreme Court in Jenkins recognized the continued vitality of Raffel’s rule that a defendant’s silence at his first trial can be used to impeach the defendant at a subsequent trial if the defendant decides to take the stand. Jenkins, 447 US at 235-238. Not only did Jenkins favorably discuss Raffel at length, but it also expressly rejected the suggestion “that the constitutional rule of Raffel was limited by later decisions of the Court,” explaining that “no Court opinion decided since Raffel has challenged its holding that the Fifth Amendment is not violated when a defendant is impeached on the basis of his prior silence.” Id. at 237 n 4.
*274 D. “CHILLING” FIFTH AMENDMENT EIGHTS
Defendant suggests that a person facing a trial will be less likely to rely on his right to remain silent if he knows that his reliance on that right can be subsequently used against him, that is to say, exercise of the Fifth Amendment right against self-incrimination will be “chilled.” However, as Jenkins, 447 US at 236-237, explained, “The Raffel Court explicitly rejected the contention that the possibility of impeachment by prior silence is an impermissible burden upon the exercise of Fifth Amendment rights.” In other words, Raffel specifically considered the argument that “the adoption of the rule contended for by the Government might operate to bring pressure on the accused to take the stand on the first trial, for fear of the consequences of his silence in the event of a second trial; and might influence the defendant to continue his silence on the second trial because his first silence may there be made to count against him,” and held that this argument was “without substance.” Raffel, 271 US at 498-499.
We need not close our eyes to the fact that every person accused of crime is under some pressure to testify, lest the jury, despite carefully framed instructions, draw an unfavorable inference from his silence.[10] When he does take the stand, he is under the same pressure: to testify fully, *275 rather than avail himself of a partial immunity. And the accused at the second trial may well doubt whether the advantage lies with partial silence or with complete silence. Even if, on his first trial, he were to weigh the consequences of his failure to testify then, in the light of what might occur on a second trial, it would require delicate balances to enable him to say that the rule of partial immunity would make his burden less onerous than the rule that he may remain silent, or at his option, testify fully, explaining his previous silence. We are unable to see that the rule that if he testifies, he must testify fully, adds in any substantial manner to the inescapable embarrassment which the accused must experience in determining whether he shall testify or not. [Id. at 499 (citations omitted).]
It is well established that “the Constitution does not forbid ‘every government-imposed choice in the criminal process that has the effect of discouraging the exercise of constitutional rights.’ ” Jenkins, 447 US at 236, quoting Chaffin v Stynchcombe, 412 US 17, 30; 93 S Ct 1977; 36 L Ed 2d 714 (1973). More specifically, “[i]t is well settled that the government need not make the exercise of the Fifth Amendment privilege cost free.” McKune v Lile, 536 US 24, 41; 122 S Ct 2017; 153 L Ed 2d 47 (2002) (opinion by Kennedy, J.). For example, in Crampton v Ohio, decided with McGautha v California, 402 US 183, 185, 211; 91 S Ct 1454; 28 L Ed 2d 711 (1971),[11] the Court held that Ohio’s single-trial procedure, which allowed a defendant to “remain silent on the issue of guilt only at the cost of surrendering any chance to plead his case on the issue of punishment,” was “constitutionally permissible.” As the Court explained:
*276 The criminal process, like the rest of the legal system, is replete with situations requiring “the making of difficult judgments” as to which course to follow. Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose....
... It does no violence to the privilege that a person’s choice to testify in his own behalf may open the door to otherwise inadmissible evidence which is damaging to his case....
It has long been held that a defendant who takes the stand in his own behalf cannot then claim the privilege against cross-examination on matters reasonably related to the subject matter of his direct examination. It is not thought overly harsh in such situations to require that the determination whether to waive the privilege take into account the matters which may be brought out on cross-examination. It is also generally recognized that a defendant who takes the stand in his own behalf may be impeached by proof of prior convictions or the like.[12] Again, it is not thought inconsistent with the enlightened administration of criminal justice to require the defendant to weigh such pros and cons in deciding whether to testify. [Id. at 213-215 (citations omitted).]
Similarly, in Chaffin, 412 US at 18, 29, the Court held that “in those States that entrust the sentencing responsibility to the jury, the Due Process Clause of the Fourteenth Amendment [does not] bar[] the jury from rendering higher sentences on retrials following rever *277 sals of prior convictions,” even though the potential of “harsher sentences on retrial.. . [may] have a ‘chilling effect’ on the convicted defendant’s exercise of his right to challenge his first conviction either by direct appeal or collateral attack.” “The choice occasioned by the possibility of a harsher sentence, even in the case in which the choice may in fact be ‘difficult,’ does not place an impermissible burden on the right of a criminal defendant to appeal or attack collaterally his conviction.” Id. at 35. See also Brady v United States, 397 US 742, 751; 90 S Ct 1463; 25 L Ed 2d 747 (1970) (declining “to hold .. . that a guilty plea is compelled and invalid under the Fifth Amendment whenever motivated by the defendant’s desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged”); People v Wyngaard, 462 Mich 659, 673-674; 614 NW2d 143 (2000) (“[T]he tactical decision that an inmate must make regarding whether to testify at a disciplinary hearing, when his testimony might potentially be used against him in a subsequent criminal proceeding, while perhaps quite difficult, does not constitute ‘compulsion’ under the Fifth Amendment.”) (citation and quotation marks omitted). Likewise, the fact that a defendant deciding whether to take the stand might consider that, if he does not take the stand and a mistrial is declared and the prosecutor decides to retry him and he subsequently decides to take the stand at his second trial, the prosecutor might be able to use his silence at his first trial to impeach his testimony at the second trial, does not place an impermissible burden on the defendant’s right to not take the stand in the first place. That is, it does not “compel” the defendant “to be a witness against himself,” which is all the Fifth Amendment prohibits.
*278 “In determining whether a constitutional right has been burdened impermissibly, it also is appropriate to consider the legitimacy of the challenged governmental practice.” Jenkins, 447 US at 238. In this case, as in Jenkins, the challenged governmental practice is impeachment on cross-examination of a defendant, and as Jenkins, 447 US at 238, explained:
Attempted impeachment on cross-examination of a defendant, the practice at issue here, may enhance the reliability of the criminal process. Use of such impeachment on cross-examination allows prosecutors to test the credibility of witnesses by asking them to explain prior inconsistent statements and acts. A defendant may decide not to take the witness stand because of the risk of cross-examination. But this is a choice of litigation tactics. Once a defendant decides to testify, “[the] interests of the other party and regard for the function of courts of justice to ascertain the truth become relevant, and prevail in the balance of considerations determining the scope and limits of the privilege against self-incrimination.”
Thus, impeachment follows the defendant’s own decision to cast aside his cloak of silence and advances the truthfinding function of the criminal trial. [Citation omitted; alteration in the original.][13]
A defendant in a criminal case does not have to testify. *279 However, “[i]f he takes the stand and testifies in his own defense, his credibility may be impeached and his testimony assailed like that of any other witness . . . Brown v United States, 356 US 148, 154; 78 S Ct 622; 2 L Ed 2d 589 (1958); see also People v Collier, 426 Mich 23, 38; 393 NW2d 346 (1986) (“When a defendant at trial elects to waive his privilege not to testify and takes the stand, attempted impeachment is a time-honored method of advancing the truthfinding function.”). “Such a witness has the choice, after weighing the advantage of the privilege against self-incrimination against the advantage of putting forward his version of the facts and his reliability as a witness, not to testify at all.” Brown, 356 US at 155. However, “[h]e cannot reasonably claim that the Fifth Amendment gives him not only this choice but, if he elects to testify, [also] an immunity from cross-examination on the matters he has himself put in dispute.” Id. at 155-156. Indeed, if the Fifth Amendment were interpreted to confer a “ ‘right to set forth to the jury all the facts which tend in [the defendant’s] favor without laying himself open to cross-examination upon those facts,’ ” “[i]t would make of the Fifth Amendment not only a human safeguard against judicially coerced self-disclosure but a positive invitation to mutilate the truth a party offers to tell.” Id. at 155-156 (citation omitted). Because “ ‘[t]here is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government’s disability to challenge his credibility,’ ” id. at 156 (citation omitted), the Fifth Amendment has never been interpreted as conferring that right, and we refuse to do so here today.[14]
*280 IV CONCLUSION
For these reasons, we hold that defendant was not improperly impeached with his silence when the prosecutor made repeated references to defendant’s failure to testify at his first trial. We therefore reverse the judgment of the Court of Appeals to the extent that it conflicts with this holding. We also hold that the prosecutor’s references to defendant’s post-arrest, post-Miranda silence at trial plainly violated Doyle. Accordingly, we do not disturb the ultimate disposition reached by the Court of Appeals, i.e., the reversal of defendant’s convictions. We otherwise vacate this Court’s June 6, *281 2012 order granting leave to appeal and deny the prosecutor’s application for leave to appeal because we are not persuaded that this Court should review the remaining question presented. We also remand this case to the trial court for further proceedings consistent with this opinion. If defendant chooses to testify at a third trial, the prosecutor may again refer to his failure to testify at his first trial without violating defendant’s constitutional rights.
YOUNG, C.J., and Kelly and ZAHRA, JJ., concurred with Markman, J.

 For instance, the prosecutor asked defendant, “You didn’t tell that jury the same story you’re telling this jury, did you, sir?” and “[I]f that was the truth and that was so important, why didn’t you tell the last jury?”

 Specifically, the prosecutor said, “Well, ladies and gentleman, if it’s the truth, if it’s the truth and you’re on trial, why wouldn’t you tell the first jury?”

 Cf. United States v Robinson, 485 US 25, 34; 108 S Ct 864; 99 L Ed 2d 23 (1988) (“It is one thing to hold, as we did in Griffin, that the prosecutor may not treat a defendant’s exercise of his right to remain silent at trial as substantive evidence of guilt; it is quite another to urge, *266 as defendant does here, that the same reasoning would prohibit the prosecutor from fairly responding to an argument of the defendant by adverting to that silence.”); People v Sutton (After Remand), 436 Mich 575, 580; 464 NW2d 276 (1990) (“[S]ilence is admissible to impeach a defendant’s claim that he did not remain silent.”).

 See People v Prevost, 219 Mich 233, 238; 189 NW 92 (1922) (“ ‘The exemption from unfavorable comment is applicable only when the accused wholly refrains from testifying. If he voluntarily goes upon the stand, he waives this exemption, and the State may comment upon his testimony as fully as upon that of any other witness, and may call attention to his silence and demeanor while there, or at the preliminary examination, to his refusal to answer incriminating questions; or to deny prominent and damaging facts of which he must have some personal knowledgef.]’ ”), quoting Under-hill, Criminal Evidence (2d ed), § 68; People v McCrea, 303 Mich 213, 285; 6 NW2d 489 (1942) (“ ‘The privilege of the defendant against self-incrimination and its corollary, the prohibition against comment by counsel for the government upon his failure to testify, have been jealously protected by the courts. But, when the defendant elects, voluntarily, to testify, he waives his privilege, subjects himself to cross-examination and impeachment, and makes comment upon his testimony [or his refusal to testify] entirely proper.’ ”) (citation omitted).

 While Justice CAVANAGH may be correct that Raffel “ ‘did not focus on the question whether the cross-examination there involved was in fact probative in impeaching the defendant’s credibility,’ ” post at 288 (emphasis added; citation omitted), Raffel also was not silent on the subject either. Instead, Raffel, 271 US at 497-498, expressly held that the defendant’s prior silence was not “irrelevant” and may “have a bearing on his credibility and on the truth of his own testimony in chief.” Contrary to Justice Cavanagh’s suggestion, we do not hold that “a defendant’s silence is per se highly probative, that a defendant’s silence at a previous trial is ‘plain evidence of guilt’ that should not be suppressed, or that the use of a defendant’s silence as an impeachment tool should be applied with ‘special vigor ....’” Post at 290 n 6. Instead, we simply hold that a defendant’s prior silence might be, under certain circumstances, probative evidence with regard to a defendant’s credibility, or lack thereof, and that when it is, assuming that its admission is otherwise permitted under the rules of evidence, it should not be excluded from the evidence presented to the jury.

 Justice Cavanagh cites Justice Levin’s concurrence/dissent in Cetlinski, 435 Mich at 788-789, for the proposition that “ ‘a defendant’s silence is not generally admissible.’ ” Post at 289 (emphasis in the original). However, this seems to be inconsistent with the majority opinion in Cetlinski, 435 Mich at 760 n 31, which held that “prior silence of a witness with regard to a fact to which he has testified, where such silence occurs under circumstances in which he would be expected to speak out, may be used to impeach during cross-examination,” as well as with *269 majority opinions from the United States Supreme Court. See, e.g., Jenkins, 447 US at 239 (“Common law traditionally has allowed witnesses to be impeached by their previous failure to state a fact in circumstances in which that fact naturally would have been asserted.”), citing 3A Wigmore, Evidence (Chadboum rev), § 1042, p 1056; Baxter v Palmigiano, 425 US 308, 319; 96 S Ct 1551; 47 L Ed 2d 810 (1976) (“[T]he Court has consistently recognized that in proper circumstances silence in the face of accusation is a relevant fact not barred from evidence by the Due Process Clause. Indeed,.. . [sjilence is often evidence of the most persuasive character.”) (citations and quotation marks omitted); United States v Hale, 422 US 171, 176; 95 S Ct 2133; 45 L Ed 2d 99 (1975) (“Silence gains more probative weight where it persists in the face of accusation, since it is assumed in such circumstances that the accused would be more likely than not to dispute an untrue accusation.”); Grünewald v United States, 353 US 391, 422-423; 77 S Ct 963; 1 L Ed 2d 931 (1957) (“Innocent men are more likely to [remain silent] in secret proceedings, where they testify without advice of counsel and without opportunity for cross-examination, than in open court proceedings, where cross-examination and judicially supervised procedure provide safeguards for the establishing of the whole, as against the possibility of merely partial, truth.”).

 Moreover, “[t]he decision in Stewart v. United States was based on federal evidentiary grounds, not on the Fifth Amendment,” Jenkins, 447 US at 237 n 4 (citation omitted), and thus it is not binding on this Court. See People v Finley, 431 Mich 506, 514; 431 NW2d 19 (1988).

 Defendant alternatively argues that his silence at his first trial is barred as an evidentiary matter. But see Cetlinski, 435 Mich at 760 n 31 (“[P]rior silence of a witness with regard to a fact to which he has testified, where such silence occurs under circumstances in which he would be expected to speak out, may be used to impeach during cross-examination.”). Because defendant did not previously raise this issue, the lower courts did not address it, and thus we will not address it either. However, on remand, defendant is not precluded from raising this issue. To this extent, we agree with Justice Cavanagh that “the fact that impeaching a defendant with his or her silence at a prior trial might be constitutional does not mean that, as an evidentiary matter, a defendant’s prior silence is automatically admissible in a later trial when a defendant elects to waive his constitutional and statutory rights in favor of testifying.” Post at 288-289 (emphasis altered). That is, we agree with Justice Cavanagh that the admission of a defendant’s prior silence, as with any other piece of evidence, must comply with the rules of evidence, including MRE 401 (defining relevant evidence), MRE 402 (providing that relevant evidence is generally admissible), and MRE 403 (providing that relevant evidence “may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice”).

 See Note, The Admissibility of Prior Silence to Impeach the Testimony of Criminal Defendants, 18 U Mich J L Reform 741, 752, 766 (1985) (Because “[t]he government inducement to remain silent, which may be caused by the shock of arrest, the fearful nature of custody, the Miranda warnings, or any combination thereof, will gradually lose its influence on the defendant as pressure is diminished and advice of counsel [is] obtained,” “silence occurring long after the Miranda ‘inducement’ may be used for impeachment.”).

 See Williams v Florida, 399 US 78, 83-84; 90 S Ct 1893; 26 L Ed 2d 446 (1970) (“The defendant in a criminal trial is frequently forced to testify himself and to call other witnesses in an effort to reduce the risk of conviction. When he presents his witnesses, he must reveal their identity and submit them to cross-examination which in itself may prove incriminating or which may furnish the State with leads to incriminating rebuttal evidence. That the defendant faces such a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination.”); Barnes v United States, 412 US 837, 847; 93 S Ct 2357; 37 L Ed 2d 380 (1973) (“Introduction of any evidence, direct or circumstantial, tending to implicate the defendant in the alleged crime increases *275 the pressure on him to testify. The mere massing of evidence against a defendant cannot be regarded as a violation of his privilege against self-incrimination. ”).

 The decision in Crampton was later vacated on other grounds. Crampton v Ohio, 408 US 941; 92 S Ct 2873; 33 L Ed 2d 765 (1972).

 Similarly, “a statement taken in violation of Miranda v. Arizona, 384 U.S. 436 (1966), may be used to impeach a defendant’s credibility.” Jenkins, 447 US at 237, citing Hams v New York, 401 US 222, 225; 91 S Ct 643; 28 L Ed 2d 1 (1971) (“Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury.”).

 See Department of Justice, Office of Legal Policy, Report to the Attorney General on Adverse Inferences from Silence, 22 U Mich J L Reform 1005, 1007 (1989) (“While the nature of the evidence available in criminal prosecutions varies widely from case to case, there is one constant among the potential sources of evidence — -the defendant himself is almost invariably aware of whether he actually committed the offense with which he is charged. The criminal justice system’s approach to that uniquely knowledgeable individual (the defendant) as a source of evidence has an important bearing on its effectiveness in the pursuit of truth and substantive justice.”); Note, 18 U Mich J L Reform at 756 (“Use of prior silence to impeach a defendant’s trial testimony aids in the truth-testing function. Because the defendant has a critical interest in the outcome of his trial, he may have a great incentive to perjure himself or distort the facts when he testifies. Therefore, truth-testing functions *279 of impeachment and cross-examination should he applied with special vigor to assure the veracity of the defendant’s testimony.”).

 As explained in the Report to the Attorney General, 22 U Mich J L Reform at 1119-1120:
*280 Any constraints on the discovery or use of evidence that the Constitution actually prescribes must, of course, be scrupulously observed. It is a very different matter, however, to create new “rights,” based on misinterpretations of the Constitution, which limit legislative discretion in seeking to improve the processes of justice for the benefit of the whole public, and impede government in discharging its primary mission of ensuring the security of its people in their lives and liberty:
“Truth here is the aim .... When the guilty go undetected, or, if detected, are nonetheless set free because plain evidence of guilt is suppressed, the price is exacted from what must be the first right of the individual, the right to be protected from criminal attack in his home, in his work, and in the streets. Government is constituted to provide law and order. The Bill of Rights must be understood in the light of that mission.
“There is no right to escape detection. There is no right to commit a perfect crime or to an equal opportunity to that end. The Constitution is not at all offended when a guilty man stubs his toe. On the contrary, it is decent to hope that he will.... Thus the Fifth Amendment does not say that a man shall not be permitted to incriminate himself, or that he shall not be persuaded to do so. It says no more than that a man shall not be ‘compelled’ to give evidence against himself.”
In particular, the [Fjifth [Ajmendment does not state or fairly imply that rules must be adopted to protect the defendant from the inferences which are normally drawn from silence in the face of incriminating circumstances. [Citation omitted.]