*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOSHUA MALIK CARTER,

        Defendant-Appellant.

UNPUBLISHED
August 14, 2025
9:16 AM

No. 368388
Macomb Circuit Court
LC No. 2022-001692-FC

Before: YOUNG, P.J., and LETICA and KOROBKIN, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of first-degree felony murder, MCL 750.316(1)(b), and carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to life imprisonment for his first-degree felony-murder conviction and to a consecutive term of two years' imprisonment for the felony-firearm conviction. For the reasons stated in this opinion, we affirm.

## I. BACKGROUND AND FACTS

This case arises from the shooting death of Talal Shamo in March 2022 during an armed robbery by defendant and his brother, codefendant Christopher Slade, in a gas station parking lot. Defendant's roommate, Stanley Jordan, orchestrated a drug transaction in which Slade was to purchase marijuana from Shamo for approximately $2,000. One afternoon, defendant and Slade met up with Shamo in separate vehicles at a gas station. Gas station surveillance footage showed Slade entering the passenger side of Shamo's vehicle and remaining inside his vehicle for about three minutes. Slade then exited and returned to defendant's vehicle. Defendant testified that when Slade returned to defendant's vehicle, Slade stated that Shamo changed the price of the marijuana. While Slade was in defendant's vehicle, Shamo backed out of his parking spot and drove up beside defendant's vehicle for several seconds before reversing into a parking spot. Slade returned to Shamo's vehicle and the two purportedly fought, during which Slade shot Shamo in the thigh, accidentally activating the windshield wipers of Shamo's vehicle during the struggle. As Shamo attempted to exit his vehicle, defendant ran up to him and shot him twice in the head. The footage showed Slade carrying an item in one arm while he and defendant ran back to

defendant's vehicle. Although the prosecution's theory was that defendant and Slade planned to rob Shamo from the outset, defendant testified that he and Slade intended only to buy marijuana and that the shooting occurred in self-defense after the drug deal went awry.

Several days after the shooting, defendant, accompanied by his attorney, walked into the police station and identified himself but did not make a statement. Later at trial, on direct examination, the prosecution questioned the officer in charge of the investigation, Detective Michael Lewis, regarding his interaction with defendant:

> [*Prosecutor*]: And you, when did you locate [defendant]?
>
> [*Detective Lewis*]: It was the 29th, six days after the homicide.
>
> *Q*. Okay. You weren't able to find him at the residence, correct?
>
> *A*. Our special operations didn't see him temporarily at the residence the night of the shooting afterwards.
>
> *Q*. Did they have any indication specifically what his involvement was in this case?
>
> *A*. They knew he was a suspect. They didn't have a warrant.
>
> *Q*. Why didn't they apprehend him at that point in time?
>
> *A*. I wasn't there and it was related to me . . . that the sergeant of the special operation unit saw him and Slade and two other[] subjects. He didn't have an opportunity to take them down. I don't know if it was manpower or safety for themselves trying to arrest two guys that committed that crime.
>
> *Q*. At some point [defendant] does come in though?
>
> *A*. Yes.
>
> *Q*. And what was the date on that?
>
> *A*. That was the 29[th].
>
> *Q*. Did you have the opportunity to talk to him?
>
> *A*. Briefly. His—
>
> *Q*. He did not wish to talk?
>
> *A*. He didn't want to talk.

The trial court later gave the following curative jury instruction:

Also, at one time Detective Lewis made mention of the fact that when the defendant turned himself into police that he chose not to speak to Detective Lewis. This is an absolute right that every citizen of this country has. In fact, if Detective Lewis had talked to the defendant he would have had to tell the Defendant before he even started talking that the Defendant has a right to refuse to talk, and the Defendant has a right to have a lawyer present when he was talking to Detective Lewis.

So the fact that the Defendant had a lawyer and didn't want to talk to Detective Lewis cannot be used by you in any way and is not any indication of anything. It's a constitutional right that every citizen of this country has.

Additionally, defendant elected to testify on his own behalf, and his testimony included the following:

[*Defense counsel*]: Now, we heard from Detective Lewis that you turned yourself into police?

[*Defendant*]: Correct.

\* \* \*

*Q*. How did you turn yourself into police?

*A*. I walked in. Told them my name. I walked in with a lawyer and told them who I was.

Following trial, defendant was convicted and sentenced as previously described.[1] Defendant now appeals.

## II. STANDARDS OF REVIEW

This Court reviews de novo claims of constitutional errors. *People v Skinner*, 502 Mich 89, 99; 917 NW2d 292 (2018). We also review de novo a challenge to the sufficiency of the evidence. *People v Prude*, 513 Mich 377, 384; 15 NW3d 349 (2024).

We review unpreserved challenges for plain error affecting substantial rights. *People v Jackson* (*On Reconsideration*), 313 Mich App 409, 428; 884 NW2d 297 (2015); *People v Meshell*, 265 Mich App 616, 638, 696 NW2d 754 (2005). As our Supreme Court explained in *People v*

---

[1] Defendant was also charged with first-degree premeditated murder, MCL 750.316(1)(a), and was convicted of the lesser included offense of second-degree murder, MCL 750.317; however, at the request of the prosecution, the trial court dismissed the second-degree murder conviction and an accompanying conviction of felony-firearm.

*Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999), for a defendant to avoid forfeiture under the plain error rule, they must meet these three requirements:

> 1) [E]rror must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. [*United States v Olano*, 507 US 725, 731-734; 113 S Ct 1770; 123 L Ed 2d 508 (1993).] The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. *Id*. [at 734]. "It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *Id*. Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error " 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." [*Id*. at 736-737 (second alteration in original).]

We generally review a claim alleging ineffective assistance of counsel as a mixed question of fact and constitutional law. *People v Johnson*, 293 Mich App 79, 90; 808 NW2d 815 (2011). However, we will review an unpreserved claim of ineffective assistance of counsel for errors apparent from the record. *Id*. "The standards for 'plain error' review and ineffective assistance of counsel are distinct, and therefore, a defendant can obtain relief for ineffective assistance of counsel even if he or she cannot demonstrate plain error." *People v Hughes*, 506 Mich 512, 523; 958 NW2d 98 (2020), citing *People v Randolph*, 502 Mich 1, 917 NW2d 249 (2018).

## III. ANALYSIS

### A. ISSUES PRESENTED BY COUNSEL

### 1. RIGHT AGAINST SELF-INCRIMINATION

Defendant first argues that he was deprived of a fair trial and his Fifth Amendment right against self-incrimination when the prosecution elicited testimony from Detective Lewis at trial that defendant "didn't want to talk" when Detective Lewis met with defendant at the police station. We disagree.

It has long been recognized that, "to protect the privilege against compelled self-incrimination during custodial police interrogations," a suspect in a criminal investigation has the right to remain silent and, to that end, must be advised of their *Miranda*[2] rights prior to questioning. *People v Clary*, 494 Mich 260, 265; 833 NW2d 308 (2013). But *Miranda* warnings need only be provided when the suspect is "in custody." *People v Hill*, 429 Mich 382, 391; 415 NW2d 193 (1987). "Custody must be determined on the basis of how a reasonable person in the suspect's situation would perceive his or her circumstances and whether the reasonable person would believe that he or she was free to leave." *People v Roberts*, 292 Mich App 492, 504; 808 NW2d 290

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

(2011). "Whether an individual is effectively 'in custody' is based on the totality of the circumstances." *Id*. at 505.

As a matter of due process, the prosecution is forbidden from commenting at trial on a defendant's constitutionally protected right to remain silent while that defendant was in custody. *Clary*, 494 Mich at 265. In other words, when a defendant is arrested, read their *Miranda* rights, and chooses to remain silent, that silence cannot be later used against them at trial. *Id*. In contrast, it is not a violation of due process for a prosecutor to refer at trial to a defendant's *prearrest* silence in an effort to impeach the defendant's credibility. *Id*. at 266. A "defendant's right to due process is implicated only where his silence is attributable to either an invocation of his Fifth Amendment right or his reliance on the *Miranda* warnings." *People v Solmonson*, 261 Mich App 657, 664-665; 683 NW2d 761 (2004).

In this case, we will assume without deciding that defendant had been Mirandized and was "in custody" at the time in question, thereby triggering Fifth Amendment protections. Insofar as Detective Lewis's testimony might be perceived as referring to silence that triggers Fifth Amendment protections, we nonetheless conclude that the fleeting nature of that reference, particularly combined with the subsequent curative instruction to rectify any potential error, did not amount to a violation of defendant's right to a fair trial. "In general, any reference to a defendant's post-arrest, post-*Miranda* silence is prohibited, but in some circumstances a single reference to a defendant's silence may not amount to a violation . . . if the reference is so minimal that 'silence was not submitted to the jury as evidence from which it was allowed to draw any permissible inference . . . .' " *People v Shafier*, 483 Mich 205, 214-215; 768 NW2d 305 (2009), quoting *Greer v Miller*, 483 US 756, 764-765; 107 S Ct 3102; 97 L Ed 2d 618 (1987). Additionally, jurors are presumed to follow the trial court's instructions, and jury instructions are presumed to rectify most errors. *People v Zitka*, 335 Mich App 324, 348; 966 NW2d 786 (2020).

In *People v Dennis*, 464 Mich 567, 581-582; 628 NW2d 502 (2001), our Supreme Court relied on several factors in determining that, despite the prosecution's elicitation of testimony that the defendant had invoked his right to remain silent, the defendant's constitutional rights had not been violated. The factors include

> (1) the limited nature of the improper testimony, (2) the lack of any effort by the prosecution to improperly use defendant's invocation of the *Miranda* rights against him, (3) the strong curative instruction used by the trial court, and (4) that defendant did not testify so there is no concern of his post-*Miranda* silence having been used for impeachment purposes. [*Id*. at 583.]

Applying the *Dennis* factors here, we reach the same conclusion. First, Detective Lewis's testimony regarding defendant's silence was short, not mentioned again by the prosecution, and defense counsel's objection was made outside the jury's presence. See *id.* Second, the prosecution did not attempt to use defendant's silence against him on cross-examination or in argument. See *id.* Third, the trial court provided a strong curative instruction, which was substantively identical

to the instruction in *Dennis* that was held to cure the error in that case.[3]  See *id.*  Fourth, although defendant did testify, the record shows that the prosecution did not refer to defendant's silence on cross-examination.  See *id.*  Given these facts, we are not persuaded that the prosecution's fleeting reference to defendant's silence during its examination of Detective Lewis violated defendant's Fifth Amendment right against self-incrimination or his due process right to a fair trial.

## 2.  SUFFICIENCY OF THE EVIDENCE

Defendant next argues that the prosecution did not present sufficient evidence for a jury to convict him of first-degree felony murder based on an underlying felony of larceny.  As a preliminary matter, although the initial felony information in this case stated that the underlying felony for defendant's felony-murder charge was larceny, the information was later amended, changing the underlying felony from larceny to armed robbery.  The prosecution proceeded to trial on the amended information and the jury was instructed accordingly.  In light of this discrepancy, we will address whether the evidence was sufficient to convict defendant of felony murder based on the underlying felony of armed robbery.

In reviewing a claim regarding sufficiency of the evidence,

> appellate courts review the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt.  A reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict. This standard of review is deferential to the fact-finder that weighed the evidence to determine the criminal defendant was guilty beyond a reasonable doubt. [*Prude*, 513 Mich at 385 (cleaned up).]

---

[3] The *Dennis* Court provided the following curative instruction:

> Also, at one time [the detective] made mention of the fact that when we [sic] went out to the jail to talk to [defendant], [defendant] did not want to talk to him and [defendant] said that he wanted a lawyer.

> This is an absolute right that every citizen of this country has.  In fact, if Officer Cooper had talked to [defendant], he would have had to tell [defendant] before he even started talking that [defendant] had a right to refuse to talk, and [defendant] had a right to have a lawyer present when he was talking to the officer.

> So the fact that [defendant] said he wanted a lawyer and didn't want to talk to the officer cannot be used by you in any way and is not any indication of anything. It's a constitutional right that every citizen of this country has. [*Dennis*, 464 Mich at 571.]

The elements that the prosecution must prove for a defendant to be convicted of felony murder are as follows:

> (1) the killing of a person, (2) with the intent to kill, do great bodily harm, or create a high risk of death or great bodily harm with the knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of an enumerated felony. [*People v Lane*, 308 Mich App 38, 57-58; 862 NW2d 446 (2014).]

"[A] conviction on the underlying felony is not an element of felony murder . . . ." *People v Seals*, 285 Mich App 1, 15; 776 NW2d 314 (2009). In other words, the felony-murder statute requires proof that the murder took place during the commission of an enumerated felony, but it does not require that a defendant "be charged and convicted of an underlying felony." *Id*. at 16.

In this case, the prosecution alleged that defendant committed armed robbery, enumerated in MCL 750.316(1)(b), under an aiding-and-abetting theory. MCL 767.39.[4] A conviction based on an aiding and abetting theory must be supported by the following three elements:

> (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement. [*People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006) (quotation marks and citation omitted; alteration in original).]

The prosecution may also prove the charged offense on an aiding and abetting theory if "the charged offense was a natural and probable consequence of the commission of the intended offense." *Id*. at 15. "An aider or abettor's state of mind may be inferred from all the facts and circumstances . . . ." *People v Ventour*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 363922); slip op at 6.

The elements of armed robbery under MCL 750.529 are:

> (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or

---

[4] MCL 767.39 provides:

> Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense.

represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Muhammad*, 326 Mich App 40, 61; 931 NW2d 20 (2018) (quotation marks and citation omitted.]

We conclude that it was reasonable for the jury to find beyond a reasonable doubt that defendant committed armed robbery under an aiding-and-abetting theory. Viewed in the light most favorable to the prosecution, the evidence demonstrates that Slade committed armed robbery by carrying *something* from Shamo's vehicle, reasonably inferred to be the marijuana for the transaction, when he ran back to defendant's vehicle after both he and defendant shot Shamo, in the thigh and head, respectively. See *id*. The evidence also indicates that defendant actively assisted and participated in the armed robbery by shooting Shamo and driving the getaway vehicle. See *Robinson*, 475 Mich at 6. In light of the video footage showing that defendant shot Shamo in the head multiple times after running up to him while Shamo tried to flee his vehicle, it was reasonable for the jury to discredit defendant's self-defense argument and find beyond a reasonable doubt that defendant intended to, and did, shoot and kill Shamo during the commission of an armed robbery with Slade. See *Lane*, 308 Mich App at 57-58. Therefore, the evidence was sufficient to support defendant's conviction for first-degree felony murder.

## B. DEFENDANT'S STANDARD 4 BRIEF[5]

### 1. CHALLENGES TO THE COMPOSITION OF THE JURY

Defendant challenges the composition of the jury on two grounds, asserting that the jury was not drawn from a fair cross section of the community and that the jury was biased against him. We disagree.

Under the Sixth Amendment, a criminal defendant has the right to be tried by an impartial jury with members drawn from a fair cross section of the community. *People v Bryant*, 491 Mich 575, 595; 822 NW2d 124 (2012); *Jackson*, 313 Mich App at 428. To make a prima facie claim concerning the fair-cross-section requirement, a defendant must establish that a specific group was underrepresented in their jury pool or venire, and that the underrepresentation was caused by the " 'systemic exclusion of the group from the jury selection process.' " *People v McKinney*, 258 Mich App 157, 161; 670 NW2d 254 (2003), quoting *People v Smith*, 463 Mich 199, 203; 615 NW2d 1 (2000), quoting *Duren v Missouri*, 439 US 357, 364; 99 S Ct 664; 58 L Ed 2d 579 (1979).

As best we can discern, defendant alleges that Black individuals and individuals his age were systemically excluded from the jury venires in Macomb County. However, even if this Court were to grant defendant "the benefit of the doubt on [his claims of] unfair and unreasonable underrepresentation," *Smith*, 463 Mich at 203, defendant has provided no evidence to support his bare allegations nor does a review of the lower court record yield supporting evidence. As this Court acknowledged in *Smith*, the party making the allegations of systemic underrepresentation must "proffer sufficient evidence" that will allow the trial courts to determine whether

---

[5] Defendant raises the following issues on appeal in his supplemental appellate brief filed *in propria persona* under Administrative Order No. 2004-6, 471 Mich c, cii (2004), otherwise known as a "Standard 4" brief.

representation was fair and reasonable. *Id*. at 204. This Court is simply left without means of conducting a meaningful appellate review of defendant's allegations. See *McKinney*, 258 Mich App at 161. Consequently, defendant has not established plain error affecting his substantial rights. See *Carines*, 460 Mich at 763-764.

Criminal defendants in Michigan also have the right under both the Michigan and federal Constitutions to be tried by a fair and impartial jury. *People v Miller*, 482 Mich 540, 547; 759 NW2d 850 (2008), citing US Const, Am VI and Const 1963, art 1, § 20. The purpose of voir dire is for the parties and the trial court to glean enough information to discern a rational basis to exclude individuals that are not impartial from the jury. *People v Haynes*, 338 Mich App 392, 411; 980 NW2d 66 (2021). If a juror fails to disclose information that should have been disclosed, a new trial may be warranted if such failure deprived the defendant of a fair trial. *People v Rose*, 289 Mich App 499, 529; 808 NW2d 301 (2010). If a defendant claims that the voir dire process resulted in an unfair and partial jury, they bear the burden of establishing "that a particular juror was not impartial, or at the very least, that the juror's impartiality was in reasonable doubt." *Haynes*, 338 Mich App at 411. Under the court rules, MCR 2.511(D)(3), (4), and (5), a member of a venire may be excused for cause on the basis of a demonstrated bias for or against a party, if the veniremember "shows a state of mind that will prevent the juror from rendering a just verdict, or if the [veniremember] has opinions that would improperly influence the juror's verdict." *People v Williams*, 241 Mich App 519, 521; 616 NW2d 710 (2000).

During voir dire in this case, the trial court initially inquired if any of the potential jurors had read or heard about the case through the media, and the record reflects that a "few" potential jurors held up their hands. The trial court and the parties then questioned the potential jurors throughout the voir dire regarding their sources of information concerning the potential facts of the case, whether they had preconceived ideas about defendant's guilt or innocence, and if they would hold the prosecution to its burden of proving defendant's guilt beyond a reasonable doubt. Three potential jurors appeared to have problems speaking and understanding English and were excused from the jury venire. The potential jurors were also extensively questioned by the trial court and both parties regarding their ability to remain unbiased and impartial, or if they had favoritism for or animus against the prosecution or the defense. For example, one of the potential jurors was excused after admitting that she held animosity against defense counsel because of counsel's work defending criminal defendants. The jurors were also questioned about whether they believed in the presumption of innocence, their understanding of the concept of reasonable doubt, and the prosecution's burden to prove defendant's guilt beyond a reasonable doubt. Having reviewed the voir dire procedure in its entirety, we conclude that the record does not contain evidence that would lead us to conclude that any particular juror who was selected to serve on defendant's jury was not impartial or that their impartiality was reasonably doubted. *Haynes*, 338 Mich App at 411. Accordingly, we are not convinced that defendant's dual challenges to the jury on the basis of allegations of violations of the fair-cross-section requirement and of bias have merit.

## 2. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that he was deprived of the right to effective assistance of counsel because defense counsel did not advise him of an alleged potential plea offer from the prosecution or that he would be sentenced to life imprisonment if he were to be convicted of first-degree felony murder. We disagree.

To establish a claim of ineffective assistance of counsel under *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984), a defendant must establish that (1) trial counsel's performance fell below an objective standard of reasonableness and that (2) they incurred prejudice. *Randolph*, 502 Mich at 9. For purposes of the ineffective assistance of counsel analysis, a defendant suffers prejudice when there is a reasonable probability that, but for trial counsel's errors, the result of the lower court proceedings would have been different. *Id*. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the lower court proceedings. *Id*.

Defendant contends that defense counsel did not relay to him potential plea offers from the prosecution and that defense counsel did not adequately advise him of the sentencing consequences if he was convicted of first-degree murder. In *Missouri v Frye*, 566 US 134, 144; 132 S Ct 1399; 182 L Ed 2d 379 (2012), the United States Supreme Court acknowledged that because the negotiation of a plea bargain represents a "critical point" for a defendant, a defendant requires "effective counsel during plea negotiations." The Court further held that, generally, defense counsel "has [a] duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Id*. at 145. The Court further cautioned that if defense counsel allowed the offer to expire without advising the defendant or allowing the defendant to consider the offer, counsel would not have provided the effective assistance required by the Sixth Amendment. *Id*. In the context of the plea negotiation process, under these circumstances, a defendant must demonstrate that he would have accepted the plea offer; that the prosecution would not have withdrawn it under because of any intervening reasons; that the court would have accepted the agreement; and that the conviction or sentence, or both, under the terms of the offer, would have been less severe than the judgment and sentence that were in fact imposed. *Lafler v Cooper*, 566 US 156, 164; 132 S Ct 1376; 182 L Ed 2d 398 (2012).

In the present case, this Court's review is hindered by the lack of facts apparent from the record regarding any potential plea negotiations between the prosecution and defense counsel. During a pretrial conference held on September 27, 2022, counsel for Slade informed the trial court that the parties had not yet discussed any potential plea agreements because of a pending motion to quash the charges of felony murder and felony-firearm in the information. The prosecution stated that it planned to discuss the matter with Shamo's family to determine whether they would be willing to support offering a plea of second-degree murder to defendant. Counsel for defendant did not make any statements on the record regarding any ongoing plea negotiations. Therefore, defendant is not able to demonstrate, on this record, that trial counsel's performance fell below an objective standard of reasonableness by not relaying a potential plea offer to defendant. *Randolph*, 502 Mich at 9. Similarly, nothing in the record supports a finding of prejudice. The record contains no evidence that defendant would have accepted the alleged plea offer; that the prosecution would not have withdrawn the offer because of any intervening reasons; that the court would have accepted the parties' agreement; or that the conviction or sentence, or both, under the terms of the offer, would have been less severe than the judgment and sentence that were in fact imposed. *Lafler*, 566 US at 164. Instead, this Court is being asked to rely on defendant's assumptions and speculation regarding the existence of potential plea negotiations, which is insufficient to make out a successful claim of ineffective assistance of counsel.

Defendant also criticizes trial counsel's performance on the basis that trial counsel did not adequately inform him of his potential sentence for first-degree felony murder. Defendant

suggests in his brief that he did not know that he was being sentenced for first-degree felony murder. But during the sentencing hearing, trial counsel stated that she was aware of the statutory sentence that defendant was to receive for first-degree felony murder but inquired if the second-degree murder conviction would need to be dismissed because of defendant's dual convictions of second-degree murder and first-degree felony murder. Defense counsel also stated that defendant, who had testified at trial truthfully, "understanding the outcome, unfortunately, . . . is going to receive the sentence he knows is coming." The prosecution then informed the trial court that, after speaking with its appellate department, it realized that the second-degree murder conviction should be dismissed, and that the court should sentence defendant only on the felony-murder conviction. Trial counsel stated her agreement with the dismissal of defendant's second-degree murder conviction, and at no point after these statements were made did defendant raise any concerns regarding sentencing. "[D]efendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Accordingly, the record does not support defendant's claim that he was not advised of the charges of which he was convicted or the potential sentence that he faced.

### 3. CHALLENGES TO DEFENDANT'S SENTENCE

Defendant next contends that the prosecution should not have dismissed his conviction of second-degree murder upon him receiving life imprisonment for his felony-murder conviction.[6]

Had the conviction not been dismissed, defendant's rights against double jeopardy would have been violated. Defendant was charged with first-degree premeditated murder, MCL 750.316(1)(a); second-degree murder is a lesser included offense that was presented to the jury. *People v Carter*, 395 Mich 434, 437; 236 NW2d 500 (1975) (recognizing that second-degree murder is always a lesser included offense of first-degree murder). Both the state and federal Constitutions preclude multiple punishments being imposed for the same offense. *People v Clark*, 243 Mich App 424, 429; 622 NW2d 344 (2000), citing US Const, Am V and Const 1963, art 1, § 15.[7] In *Clark*, this Court observed that multiple murder convictions that arise from the death of a single victim will violate double jeopardy protections: "Thus, [a] defendant cannot properly be convicted of both first-degree murder and the lesser included offense of second-degree murder for the death of a single victim." *Clark*, 243 Mich App at 429. Accordingly, we discern no error where the prosecution properly moved for dismissal of one of defendant's murder convictions to preserve defendant's rights under the federal and state Double Jeopardy Clauses.

---

[6] Defendant also argues on appeal that the prosecution did not prove his guilt as to first-degree felony murder beyond a reasonable doubt. Given that we already opined that the evidence was sufficient to support defendant's first-degree felony-murder conviction and that defendant did not raise any additional arguments in his Standard 4 brief on appeal that merit further review of this issue, we decline to readdress it.

[7] US Const Am V provides, in pertinent part, that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb[.]" Const 1963, art 1, § 15 provides, in pertinent part that "[n]o person shall be subject for the same offense to be twice put in jeopardy."

## 4. *BRADY*[8] VIOLATION

Finally, defendant presents an unpreserved claim that the prosecution committed a *Brady* violation by suppressing evidence extracted from Shamo's cell phone that was favorable to the defense. We conclude, however, that this issue is waived on appeal. In *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011), our Supreme Court held that once a party has waived his rights under a rule, he may not then seek appellate review of the claimed deprivation of those rights because the waiver extinguishes any alleged error. Defense counsel expressing satisfaction with the decision of the trial court constitutes a waiver. *Id.* In this case, the parties informed the trial court that they had discussed the issue of the lost cell phone evidence and had agreed to the contours of the prosecution witness's testimony on the issue. The parties also prepared a curative instruction for the final jury instructions, telling the jury that it could draw an inference adverse to the prosecution. Therefore, given defendant's approval of the prosecution's handling of this matter, as well as the concomitant curative instruction, we are satisfied that defendant waived the alleged error. *Id*.

Affirmed.

/s/ Adrienne N. Young
/s/ Anica Letica
/s/ Daniel S. Korobkin

---

[8] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).