# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TODD EDWARD HENKE,

Defendant-Appellant.

UNPUBLISHED
February 16, 2016

No. 324358
Oakland Circuit Court
LC No. 2014-249509-FC

Before: SERVITTO, P.J., and SAAD and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree premeditated murder, MCL 750.316(1)(a), and felonious assault, MCL 750.82. The trial court sentenced defendant as a fourth habitual offender, MCL 769.12, to life imprisonment for the murder conviction, and 4 to 15 years' imprisonment for the felonious assault conviction. We affirm.

Defendant's convictions arise from the stabbing death of Kurt Houghteling, and felonious assault of David Wasiel, both of whom were defendant's friends. Wasiel and Doyle Odle were both present when the victim was stabbed, and they each testified that defendant lunged toward Houghteling when the stabbing occurred. The defense theory at trial was that defendant stabbed Houghteling accidently.

The defense theory of an accidental stabbing was supported solely by defendant's testimony, on direct examination, that he inadvertently stabbed the victim when he tripped over the victim's leg and fell on top of the victim. Defendant argues on appeal that the prosecutor engaged in misconduct by questioning him, and by introducing evidence, that defendant did not mention an accidental stabbing when the police attempted to question him after his arrest, but instead invoked his right to silence. Because defendant did not object to the prosecutor's questioning of defendant, or to the introduction of Detective Morgan's testimony about defendant post-arrest silence and invocation of his right to counsel, this issue is unpreserved.

We review unpreserved claims of prosecutorial misconduct for plain error affecting substantial rights. *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014). A plain error is one that is "clear or obvious." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). A plain error affects substantial rights if it "affect[s] the outcome of the lower court proceedings." *Id.* "Whether defendant was improperly impeached with his silence is a question

-1-

of law that [this Court] review[s] de novo." *People v Clary*, 494 Mich 260, 264; 833 NW2d 308 (2013).

Defendant relies on *Doyle v Ohio*, 426 US 610, 611; 96 S Ct 2240; 49 L Ed 2d 91 (1976), in support of his argument that the prosecutor improperly introduced evidence of his post-arrest silence to impeach his claim of an accidental stabbing, which defendant first disclosed on direct examination at trial. In *Doyle,* the petitioners were arrested for selling 10 pounds of marijuana to a narcotics informant, an individual with an extensive criminal record who sought leniency for his latest "legal problems." At their separate trials, both petitioners alleged that the informant framed them and disputed who was selling marijuana to whom. Specifically, petitioner Doyle claimed that the informant was selling marijuana to him, and he had second thoughts about purchasing 10 pounds. Doyle alleged that this vacillation apparently angered the informant, who threw money at them, kept the marijuana, and left. *Id*. at 611-613. To undercut the petitioners' explanation, the prosecutor asked each petitioner why the claim of a "frameup" was not raised with the arresting officer. On appeal, the petitioners alleged that it was improper to allow the prosecutor to cross-examine them regarding their post-arrest silence. The state alleged that the evidence was justified because there was a distinction between an exculpatory story at trial and silence at the time of arrest, which gave rise to an inference that the story was fabricated in an effort to derail the state's case. *Id*. at 615-617. The United States Supreme Court rejected the state's position, concluding:

> Despite the importance of cross-examination, we have concluded that the *Miranda* decision compels rejection of the State's position. The warnings mandated by that case, as a prophylactic means of safeguarding Fifth Amendment rights, . . . require that a person taken into custody be advised immediately that he has the right to remain silent, that anything he says may be used against him, and that he has a right to retained or appointed counsel before submitting to interrogation. Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these *Miranda* rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. Moreover, while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial. [*Id*. at 617-619 (citations omitted).]

The Court held that the silence used as impeachment evidence after receipt of *Miranda* warnings violated the petitioners' due process rights. *Id*. at 619-620.

At trial, the prosecutor questioned defendant as follows regarding his failure to offer the accident theory before trial:

> *Q*. And you've told this jury your story about what you say happened that night, right?

> *A*. Exactly as I know how it happened.

*Q*. Well, how come you never told anybody else this story? I mean you had - -

*A*. I haven't seen nobody.

*Q*. Oh, really. Didn't Detective Morgan ask to talk to you and ask for your story?

*A*. I don't remember half of it, sir.

\* \* \*

*Q*. Didn't Detective Morgan ask to talk to you and ask for your story, and you didn't tell him anything like that, right?

*A*. I don't really remember that.

*Q*. Well, do you remember that you haven't told anybody this story before at all?

*A*. I've been in a cell for eight months.

*Q*. Isn't it true that this is the first time you have ever told anybody this story?

*A*. No.

*Q*. Who else have you told?

*A*. People in my cell.

*Q*. Okay, how 'bout people from the law enforcement community, how 'bout the detective? You never told the detective this story.

*A*. No.

*Q*. And you had a chance to tell the Detective this story.

*A*. I didn't know what to do. I was just messed up over everything.

\*\*\*

*Q*. Okay, but the point is that you could have told the officers the story, and you didn't right?

*A*. I don't remember - - remember what happened, sir.

*Q*. But you don't remember what happened.

-3-

*A*. I didn't remember what happened 'till well after that.

In rebuttal, the prosecutor called Detective Morgan, who testified that after defendant was in custody, he twice approached defendant to speak to him about the offense, but defendant declined to speak to the officer and on at least one of the occasions invoked his right to counsel.

In closing argument, the prosecutor questioned why defendant did not previously raise his accident story, stating:

> He never told anybody that story before. Now, think about that for a second. He accidentally kills somebody. He has at least two opportunities to tell the police what happened. Well, at one time, he was drunk. Okay. Not too drunk to tell the police I'm not tellin' you anything. You can talk to my lawyer. So he knows what he was doing. He knows where he was. He knows what was going on. He's not too drunk to not know what was going on. And then the second day when he presumably was not as drunk, has another opportunity to tell the police it was a terrible accident, nothing. Does that make sense to you? Is that what you would do if there was this terrible accident? Have an opportunity twice now to tell your story, and never tell a story at all, except for your cell mates in the jail, never tell anybody that story until he comes in here, and tells you 14 people the story. If it was true, he would have told the story months ago when he had the chance. He didn't, and it's proof that it's not true. He says it was just all a terrible accident, this stabbing of Kurt Hoteling [sic]. He says it was just a terrible accident.

A *Doyle* violation is clear when the prosecutor makes repeated references to a defendant's silence for the purpose of showing substantive evidence of guilt as well as for impeachment purposes. *People v Shafier*, 483 Mich 205, 218; 768 NW2d 305 (2009). However, the rule elicited in *Doyle* does not apply when the silence occurs (a) before arrest or (b) after arrest, but before *Miranda* warnings are given, or (c) to impeach a defendant's testimony that he gave the police an exculpatory version of events at arrest. *People v Borgne*, 483 Mich 178, 187, 192; 768 NW2d 290 (2009), aff'd on rehearing 485 Mich 868 (2009).

In the present case, although Detective Morgan testified in rebuttal regarding his contacts with defendant, who declined to give a statement, he did not indicate when defendant was placed under arrest or given *Miranda* warnings. Although defendant acknowledges this deficiency and has submitted a police report with his brief on appeal, this constitutes an improper expansion of the record on appeal.[1] *People v Nix*, 301 Mich App 195, 203; 836 NW2d 224 (2013). Even

---

[1] The report reflects that Detective Morgan came into contact with an intoxicated defendant, informed him that they would speak to him when he was sober, and that defendant advised the detective that he could speak to his attorney. This report does not indicate whether defendant had been arrested for the victim's murder or held on other grounds, such as a parole hold or outstanding warrant. We note that defendant testified at trial that he had an outstanding warrant for driving with a suspended license. The report also does not indicate whether or when

assuming, however, that defendant's silence occurred post-arrest, post-*Miranda*, and that the prosecutor therefore violated the rule in *Doyle*, we conclude that the error did not affect defendant's substantial rights because it did not affect the outcome of the trial. Defendant bears the burden of demonstrating that a plain error affected his substantial rights. *Carines*, 460 Mich at 763.

Defendant testified, on direct examination, that he was "goofing off" while carrying the knives when he tripped on the victim's leg, causing him to accidently fall and strike the victim in the chest. On cross-examination, the prosecutor elicited the following testimony:

> *Q*. And by the way, why did you pick up the knives anyway?
>
> *A*. I don't really know, sir.
>
> *Q*. You don't really know?
>
> *A*. No, I really don't.
>
> *Q*. So it's possible you wanted to stab somebody then, isn't it?
>
> *A*. I don't remember.
>
> *Q*. So it is possible you wanted to stab somebody, and you just don't remember it.
>
> *A*. (Indiscernible).
>
> *Q*. What?
>
> *A*. I said yes.
>
> * * *
>
> *Q*. Okay, so it's possible you were walking in there thinking I'm gonna' stab Kurt, and kill him, right?
>
> *A*. I can't - - I can't - - I don't really know.

Defendant further testified on cross-examination that he first started remembering what happened about three or four months after the offense, but said he remembered just "bits and pieces." When questioned further about picking up the knives, defendant again expressed

defendant was advised of his *Miranda* rights. The record reflects that an interview was attempted with defendant the next day, but after he was read his *Miranda* rights, he indicated that he did not remember what happened and needed to speak to an attorney. The police report discloses that defendant was then advised "of the charges" for killing the victim, but then states that a request for open murder charges was sent to the prosecutor's office. Thus, it is unclear if *Doyle* is applicable.

difficulty remembering, explaining that "it's all cloudy," and he again stated that he did not recall what he intended to do with the knives. Defendant stated that he did not remember much about the stabbing because he was "pretty blind . . . drunk by then." Defendant also testified that he did not remember threatening Wasiel, but admitted "I may have." Additional questioning led to the following exchange:

> *Q.* How 'bout the knife that ends up in Kurt Hoteling's [sic] chest, you aren't saying somebody else did that. You did that, right?
>
> *A.* I guess I did.
>
> *Q.* What do you mean you guess you did?
>
> *A.* I guess I did.
>
> *Q.* You guess?
>
> *A.* I'm not—I'm not sure.
>
> *Q.* You're not sure?
>
> *A.* I'm not sure of anything.
>
> *Q.* You're not sure of anything. So—
>
> *A.* No, I'm not.
>
> * * *
>
> *Q.* So if you're not sure of anything, you could just be makin' all of this up, right?
>
> *A.* Yeah, if he wants, yeah, I don't know what to tell you.

The potential prejudicial effect of the evidence of defendant's silence was its tendency to undermine the credibility of defendant's version of the events surrounding the stabbing, specifically that the stabbing was accidental, because defendant did not provide that exculpatory explanation when a police officer attempted to speak to him shortly after the offense. Even without the evidence of defendant's silence, however, defendant's remaining testimony on cross-examination significantly undercut the reliability of his direct examination testimony. Defendant admitted that, due to his intoxication, he either did not know or could not remember key details surrounding the offense. He further admitted that he did not know what he intended to do with the knives or whether he intended to stab someone and, more significantly, he stated that he was not even sure if he was the person who actually stabbed the victim because he was "not sure of anything." Given this testimony, there is no reasonable likelihood that the jury would have relied on the evidence of defendant's silence to discredit his claim of an accidental stabbing. Defendant's self-admitted inability to recall significant details surrounding the offense and his

testimony that he was "not sure of anything" independently signaled to the jury that it was necessary to look to other evidence to determine the relevant facts.

No other evidence supported defendant's claim of an accidental stabbing. Wasiel testified that defendant became violent when he consumed alcohol, and that he had consumed alcohol throughout the day. Wasiel and Odle both testified that defendant was in an agitated state. He made comments referring to himself as the "Grim Reaper" and "John Gotti," and said that two people would die that day. Defendant's behavior caused Odle to move the knives from the kitchen table, away from defendant. After defendant picked up the two knives from the counter, he challenged Odle and Wasiel to fight. Defendant threw one of the knives over Wasiel's head. Wasiel testified that defendant lunged the second knife into the victim's chest. Odle was not present in the same room to view the entire incident, but he saw defendant suddenly lunge toward the victim. The medical examiner testified that "major force" was necessary to pass the knife through the victim's skin. In light of this testimony, and defendant's admission that he was "not sure of anything," defendant has not established that any error arising from the introduction of the evidence of defendant's silence affected the outcome of the trial. Thus, the error did not affect defendant's substantial rights.

Defendant also argues that defense counsel was ineffective for failing to object to the prosecutor's questioning and evidence of his silence when the police attempted to talk to him. "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *Nix*, 301 Mich App at 207. Even assuming that defense counsel's failure to object fell below an objective standard of reasonableness, defendant has not established resulting prejudice. A successful objection would have precluded the jury from considering defendant's failure to mention his version of the events to the police as a reason for questioning the veracity of defendant's claim of an accidental stabbing. But as explained previously, defendant's self-admitted inability to recall significant details surrounding the offense and his testimony that he was "not sure of anything" independently undercut the reliability of his version of the events. Accordingly, there is no reasonable probability that the result of the trial would have been different had defense counsel objected and successfully excluded the evidence of defendant's silence.

Affirmed.

/s/ Deborah A. Servitto
/s/ Henry William Saad
/s/ Colleen A. O'Brien

-7-