*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

UNPUBLISHED
May 11, 2023

v

QUARTEZ QEMOND GREEN,

      Defendant-Appellant.

No. 361833
Midland Circuit Court
LC No. 20-008481-FH

Before: BOONSTRA, P.J., and GADOLA and YATES, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(c) (sexual penetration of incapacitated victim), and fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(c) (sexual contact with incapacitated victim). The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to concurrent prison terms of 18 months to 30 years for the CSC-III conviction and 18 months to 4 years for the CSC-IV conviction. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On November 15, 2019, JP invited several people, including her fiancé, two other friends, and defendant, to her home for a social gathering. All of the parties consumed alcohol and spent the night at JP's home. JP became highly intoxicated and passed out on a couch in her living room at approximately 6:00 a.m. the following morning. JP's fiancé testified that he attempted to wake her up so that she could sleep in her bedroom, but that she was unresponsive, so he covered her with a blanket and left her on the couch. Defendant was asleep on a separate couch; JP's fiancé also covered him with a blanket.

JP testified that she woke up to find defendant touching her vaginal area and penetrating her vagina with his fingers as he lay behind her on the couch. JP's shorts and underwear had been removed and were at the end of the couch by her feet. JP testified that she had initially believed that the person touching her was her fiancé; when she realized that it was defendant touching her, she immediately jumped off the couch. JP confronted defendant and told him to leave her house, which he did. Immediately thereafter, JP told her fiancé and family what had happened and

-1-

reported the assault to the police. She participated in a sexual assault examination later that evening, and several samples were collected. An expert in forensic DNA analysis testified that although the vulvar swab samples only revealed the presence of her fiancé's DNA (likely because JP had consensual sex with him within five days of the examination), the breast swab sample indicated that defendant's DNA was present on JP's breasts.

Defendant testified on his own behalf and claimed that his actions were consensual. Defendant stated that JP had invited him to join her on the couch, had pulled his arm around her so that their hands were interlocked, and began touching her own vagina. Defendant interpreted this as a sign that she wanted to engage in sexual behavior with him, so he began touching her vagina. Defendant testified that after a couple of minutes, JP suddenly jumped up, yelled at him, and told him to leave. Defendant testified that nothing led him to believe that JP was unconscious or an unwilling participant. However, on cross-examination, defendant admitted that he later sent a text message to JP in which he admitted that he had touched her vagina, that he knew that he should not have done so, and that he did not want JP to feel as though he "took advantage" of her.

The jury convicted defendant as described. This appeal followed.

## II. PROSECUTORIAL MISCONDUCT

Defendant argues that the prosecution committed prosecutorial misconduct[1] by disparaging defendant, defense counsel, and the defense strategy. Specifically, defendant argues that the prosecution called defendant a "liar" during its closing argument and disparaged defense counsel during its rebuttal argument, and that those comments were improper. We disagree.

Because defendant did not object to the prosecution's statements at trial, we review this unpreserved claim for plain error affecting substantial rights. *People v Savage*, 327 Mich App 604, 615-616; 935 NW2d 69 (2019); see also *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Claims of prosecutorial misconduct are reviewed "on a case-by-case basis by examining the record and evaluating the remarks in context . . . ." *People v Mann*, 288 Mich App 114, 119; 792 NW2d 53 (2010) (quotation marks and citation omitted; ellipsis in original). Prosecutors are "accorded great latitude regarding their arguments and conduct." *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (quotation marks and citation omitted). However, the prosecution "may not personally attack defense counsel," *People v McLaughlin*, 258 Mich App 635, 646; 672 NW2d 860 (2003), or "suggest that defense counsel is intentionally attempting to mislead the jury," *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008) (quotation marks and citation omitted).

---

[1] In *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015), lv den 498 Mich 896 (2015), this Court drew a distinction between "prosecutorial misconduct" and "prosecutorial error," concluding that "prosecutorial misconduct" should be limited to the extreme instances that go well beyond a mere "technical or inadvertent error at trial." Because defendant claims that the prosecution repeatedly and deliberately disparaged defendant and defense counsel during its closing argument, rather than committed a technical or inadvertent error, we will refer to his claim as one of prosecutorial misconduct. See *id*.

In its closing argument, the prosecution stated that defendant had "a lot of reason to lie" and that he was trying to "save his own skin here." When reviewing these remarks in context, the prosecution's statements were not improper. See *Mann*, 288 Mich App at 119. Defendant had testified on his own behalf to provide his version of the events surrounding the incident. By doing so, defendant put his credibility at issue just like every other witness who testified. See *People v Clary*, 494 Mich 260, 278-279; 833 NW2d 308 (2013). The prosecution was permitted to argue from the facts presented at trial that defendant, as a testifying witness, was "unworthy of belief." *People v Dobek*, 274 Mich App 58, 67; 732 NW2d 546 (2007). The record shows that the prosecution asked the jury to compare JP's and defendant's motives when considering who was more credible. This was consistent with the latitude allowed to prosecutors in their arguments, and nothing here suggests that the prosecution drew any unreasonable inferences from or made impermissible commentary on the presented evidence and denied defendant a fair trial. See *Bahoda*, 448 Mich at 266-267, 284-285.

Additionally, nothing suggests that the prosecution personally attacked defense counsel in its rebuttal argument. The prosecution specifically referred to defense counsel by name on a handful of occasions, but it only did so to draw the jury's attention to specific arguments that defense counsel made during his closing argument. For example, the prosecution stated: "You know—and [defense counsel's] argument that, you know, we don't believe in our case or we don't know, you know, what happened, therefore, we just charged everything, is simply not true." The prosecution also pointed out that defense counsel "didn't really address what his client said" and theorized that it was because "some of the things his client said, don't make any sense." The prosecution's remarks during rebuttal "must be considered in light of defense counsel's comments," and "an otherwise improper remark may not rise to an error requiring reversal when the prosecutor is responding to the defense counsel's argument." *Unger*, 278 Mich App at 238 (quotation marks, citations, and alteration omitted). The prosecution was permitted to respond to defense counsel's arguments, and it is clear that the prosecution was responding to defense counsel's suggestion that the prosecution's case was weak. Further, it was not improper for the prosecution to point out that defense counsel did not focus his closing argument on defendant's testimony; the prosecution was permitted to argue that the jury should reject defense counsel's theory of the case based on conflicting evidence presented at trial. See *People v Howard*, 226 Mich App 528, 544-545; 575 NW2d 16 (1997). Because defendant has not demonstrated that the prosecution's comments were improper, defendant has not demonstrated that any plain error occurred.

Moreover, even assuming that some or all of the prosecution's comments were improper, defendant has failed to show that a timely curative instruction would not have alleviated the harm. See *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001). The jurors were instructed by the court that they could base their verdict only on the evidence and that the lawyers' statements, arguments, and commentary are not evidence. Jurors are presumed to follow their instructions. See *Unger*, 278 Mich App at 235. Defendant has not shown plain error affecting his substantial rights. See *Carines*, 460 Mich at 763. Similarly, defendant has not demonstrated that he was prejudiced by the cumulative effect of any minor errors. See *McLaughlin*, 258 Mich App at 649; *Dobek*, 274 Mich App at 106.

## III. DOUBLE JEOPARDY

Defendant also argues that his conviction of both CSC-III and CSC-IV violated the prohibition against double jeopardy. We disagree.

Because defendant did not raise his double-jeopardy challenge in the trial court, this issue is unpreserved. See *People v Barber (On Remand)*, 332 Mich App 707, 712; 958 NW2d 288 (2020). However, generally "a double jeopardy issue presents a significant constitutional question that will be considered on appeal regardless of whether the defendant raised it before the trial court." *Id*. (quotation marks and citation omitted). We review an unpreserved double-jeopardy claim for plain error affecting substantial rights. *Id*. at 713.

Both the United States and Michigan Constitutions prohibit placing a defendant twice in jeopardy for a single offense. *Id*.; US Const, Am V; Const 1963, art 1, § 15. "The prohibition against double jeopardy protects individuals in three ways: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense." *People v Miller*, 498 Mich 13, 17; 869 NW2d 204 (2015) (quotation marks and citation omitted). Only the protection against multiple punishments is at issue in this case, because defendant was only subjected to a single prosecution. See *id*.

"The multiple punishments strand of double jeopardy is designed to ensure that courts confine their sentences to the limits established by the Legislature and therefore acts as a restraint on the prosecutor and the Courts." *Id*. at 17-18 (quotation marks and citations omitted). "Where the Legislature specifically authorizes cumulative punishment under two statutes, the multiple-punishments strand is not violated." *Barber*, 332 Mich App at 713. However, "where the Legislature expresses a clear intention in the plain language of a statute to prohibit multiple punishments, it will be a violation of the multiple punishments strand for a trial court to cumulatively punish a defendant for both offenses in a single trial." *Miller*, 498 Mich at 18. When the Legislature's intent is not clear, reviewing courts should "apply the 'abstract legal elements' test articulated in [*People v Ream*, 481 Mich 223; 750 NW2d 536 (2008)] to ascertain whether the Legislature intended to classify two offenses as the 'same offense' for double jeopardy purposes." *Miller*, 498 Mich at 19. Under the abstract legal elements test, two offenses are not the same offense "if each offense has an element that the other does not." *Ream*, 481 Mich at 240.

An individual is guilty of CSC-III if that person "engages in sexual penetration with another person" and "knows or has reason to know that the victim is mentally incapable, mentally incapacitated, or physically helpless." MCL 750.520d(1)(c). An individual is guilty of CSC-IV if that person "engages in sexual contact with another person" and "knows or has reason to know that the victim is mentally incapable, mentally incapacitated, or physically helpless." MCL 750.520e(1)(c). A person is physically helpless when he or she "is unconscious, asleep, or for any other reason is physically unable to communicate unwillingness to an act." MCL 750.520a(m).

"Sexual contact" means an "intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts" in a manner that "can reasonably be construed as being for the purpose of sexual

-4-

arousal or gratification, done for a sexual purpose, or in a sexual manner for: (*i*) [r]evenge[,] (*ii*) [t]o inflict humiliation[, or] (*iii*) [o]ut of anger." MCL 750.520a(q). "Sexual penetration" means "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MCL 750.520a(r). Therefore, each offense contains an element the other does not. See *People v Duenaz*, 306 Mich App 85, 107; 854 NW2d 531 (2014) (holding that dual convictions for first-degree criminal sexual conduct and second-degree criminal sexual conduct did not violate a defendant's double-jeopardy rights because one requires a sexual penetration while the other requires a sexual contact, which includes a sexual purpose). Because the same distinction applies to the two charges in this case, defendant has not established that CSC-III and CSC-IV constitute "the same offense" for double-jeopardy purposes. *Miller*, 498 Mich at 17.

Moreover, although defendant argues that he engaged in only a single sexual act, JP testified that she woke up to find defendant digitally penetrating her vagina, and that her underwear had been removed. Additionally, the DNA expert testified that defendant's DNA was found on JP's breasts. Therefore, the jury could have concluded that defendant engaged in "sexual contact" by touching JP's vaginal area or the clothing covering her vaginal area, or by touching her breasts; the jury could have further concluded that defendant engaged in "sexual penetration" by digitally penetrating JP's vagina. That one act may have immediately followed the other does not merge the two into a single act. Because defendant engaged in two separate acts of criminal sexual conduct, double jeopardy is not implicated. *Id*.

## IV. JURY INSTRUCTIONS AND VERDICT FORM

Defendant also argues that he is entitled to a new trial because the jury verdict form failed to conform to the jury instructions that the trial court gave to the jury. However, defendant waived his right to appeal any error with respect to the jury instructions or the verdict form because defense counsel expressly stated that he was satisfied with the proposed jury instructions. See *People v Spaulding*, 332 Mich App 638, 653; 957 NW2d 843 (2020) ("A party's explicit and express approval of jury instructions as given waives any error and precludes appellate review."); see also *People v Eisen*, 296 Mich App 326, 330; 820 NW2d 229 (2012) (holding that a jury verdict form "is treated as . . . part of the package of jury instructions," and an issue with the verdict form is considered an instructional error). Moreover, we have reviewed the jury verdict form, and, contrary to defendant's assertion, it was consistent with the jury instructions and clearly permitted the jury to render a general not-guilty verdict for each of the charged offenses.

Affirmed.

/s/ Mark T. Boonstra
/s/ Michael F. Gadola
/s/ Christopher P. Yates