*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHAEL DAVID SKUPIN,

        Defendant-Appellant.

UNPUBLISHED
January 24, 2019

No. 336554
Oakland Circuit Court
LC No. 2016-258965-FH

Before: MURRAY, C.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of four counts of possession of child sexually abusive material ("possession of CSAM"), MCL 750.145c(4).[1] Defendant was sentenced to one to four years' imprisonment for each possession of CSAM conviction. We affirm.

## I. ADMISSION OF EVIDENCE

Defendant first argues that the trial court erred in using the res gestae exception to MRE 404(b) as a justification for admitting defendant's alleged prior bad acts. "The decision to admit evidence is within a trial court's discretion, which is reviewed for an abuse of that discretion." *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). "Whether an error is constitutional in nature is an issue of law" which we review de novo. *People v Blackmon*, 280 Mich App 253, 259; 761 NW2d 172 (2008). "Preliminary questions of law, such as whether a rule of evidence or statute precludes the admission of particular evidence, are

---

[1] Defendant pleaded guilty to larceny by conversion of more than $1,000 but less than $20,000, MCL 750.362 and MCL 750.356(3)(a), but does not challenge this conviction.

reviewed de novo, and it is an abuse of discretion to admit evidence that is inadmissible as a matter of law." *Bynum*, 496 Mich at 623.

As an initial matter, we disagree that the alleged improper admission of evidence is constitutional in nature. "[E]videntiary errors are nonconstitutional." *Blackmon*, 280 Mich App at 260. Preserved, nonconstitutional errors require that "a defendant has the burden of establishing that it is more probable than not that the error in question undermined the reliability of the verdict, thereby making the error outcome determinative." *Id.* at 270 (quotation marks and brackets omitted).

Before Michigan Attorney General Special Agent Investigator and Digital Forensics Analyst Brian Laity's testimony, defendant orally argued that the images and the Internet searches should not be admitted as other bad acts. Defendant pointed out that although the prosecution did not file a MRE 404(b) notice of intent, the prosecution informed him that it would be seeking admission of the evidence. The prosecution argued that the report from which Laity would be testifying was a standard part of the investigation and should not be considered "other acts." The trial court ruled that the evidence was admissible because "it is part of the res gestae exception" to MRE 404(b). No additional MRE 404(b) analysis was performed by the trial court.

Following the ruling, Laity testified that he performed a forensic analysis on the Toshiba and HP laptops. Out of the 69 images and multiple Internet search queries that reasonably indicated a search for CSAM, only six images were admitted. The remaining images were not shown to the jury, but were generally mentioned by Laity without providing any significant detail as to their composition. Laity also testified regarding the Internet searches that were executed on the Toshiba about a month before when the Toshiba's images were accessed or viewed, as well as an additional search performed on the HP for "myyoungsex.com."

We agree that, because "there is no 'res gestae exception' to MRE 404(b)," *People v Jackson*, 498 Mich 246, 274; 869 NW2d 253 (2015), the trial court erred when it determined that the res gestae exception to MRE 404(b) permitted the evidence's admission. Nevertheless, for two reasons, the trial court reached the correct result: the evidence was admissible.

First, Laity testified generally that other CSAM images were found on the Toshiba for dates other than December 17, 2013, and further discussed an Internet search on the HP that was not associated with any specific date. Although it is proper for the police to "explain[] the steps of their investigations from their personal perceptions," *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012), these additional images and the Internet search were not inextricably related to the conduct at issue, *People v Delgado*, 404 Mich 76, 84; 273 NW2d 395 (1978). Accordingly, this evidence constituted "other acts," as provided for under MRE 404(b). See *Jackson*, 498 Mich at 262. However, bad acts evidence is admissible so long as it is "offered for a proper purpose," and "it is relevant under MRE 402; and its probative value is not substantially outweighed by unfair prejudice, MRE 403." *People v Bergman*, 312 Mich App 471, 493; 879 NW2d 278 (2015).

The other acts evidence was admissible because it was offered to prove intent, identity, preparation, and absence of mistake. Specifically, it was admissible to rebut defendant's

contention that the evidence was placed on the laptops by a virus or by someone other than himself. Because the CSAM resided on both laptops, this fact has a tendency to make the assertion that a virus was responsible for placing the CSAM on the laptops less probable, as the laptops were in different locations, and accordingly, were attached to different computer networks. See MRE 402. As discussed below, sufficient evidence also existed to show that defendant was the person who viewed the CSAM on the Toshiba on December 17, 2013; accordingly, this makes it more probable that he was the person who also viewed the images on the HP. The fact that Internet searches were executed seeking CSAM makes it more probable that defendant viewed or accessed the CSAM, which goes to identity and intent, and demonstrates preparation.

Nor was the probative value outweighed by unfair prejudice under MRE 403. Laity's testimony was tailored to its proper purpose and "did not delve into unnecessary detail or unduly invite the jury to draw an impermissible character-to-conduct inference from it." See *Jackson*, 498 Mich at 277. Laity merely superficially discussed that additional CSAM images were found on the laptops and only identified the Internet search criteria used; none of the images were admitted, thus, preventing the jury from observing additional child pornography.

Furthermore, it is unclear how this mere mention of additional images substantially prejudiced defendant as compared to the jury's actual viewing of the images that formed the basis of the charged counts. Accordingly, the images were admissible pursuant to MRE 404(b).

Second, as the prosecution correctly asserts, the images were also admissible pursuant to MCL 768.27a.

MCL 768.27a states:

(1) Notwithstanding section 27, in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant. If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence to the defendant at least 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered.

(2) As used in this section:

(a) "Listed offense" means that term as defined in section 2 of the sex offenders registration act, 1994 PA 295, MCL 28.722.[2]

(b) "Minor" means an individual less than 18 years of age.

_____

[2] Possession of CSAM, MCL 750.145c(4), is a listed offense. See MCL 28.722(j) and (s)(*i*).

"[E]vidence admissible pursuant to MCL 768.27a may nonetheless be excluded under MRE 403 if its probative value is substantially outweighed by the danger of unfair prejudice[.]" *People v Watkins*, 491 Mich 450, 481; 818 NW2d 296 (2012) (quotation marks omitted). As stated above, the evidence of the other acts was relevant. Additionally, under this statute, they may be admitted for any relevant purpose, which includes propensity, and trial courts must weigh the propensity inference in favor of its probative value. *Id*. at 470, 487. In totality, defendant cannot show that he was harmed by the alleged error because the evidence, in its entirety, was admissible, and we will affirm a decision by a trial court when it "reaches the right result, albeit for the wrong reason." See *People v Lyon*, 227 Mich App 599, 612-613; 577 NW2d 124 (1998).

## II. JURY INSTRUCTION – OTHER BAD ACTS

Defendant argues that the trial court erred when it provided the bad acts instruction because the other acts should not have been admitted in the first place, and therefore, the instruction reinforced this improperly admitted evidence.

A party must object or request a given jury instruction to preserve the error for review. *People v Sabin (On Second Remand)*, 242 Mich App 656, 657; 620 NW2d 19 (2000). When the trial court originally ruled that it would admit the other acts, it stated to defendant, "I will give a limiting instruction if you wish." Defendant did not address the issue further with the trial court, and never explicitly stated that he did not want the jury instruction. Therefore, not only did defendant fail to preserve the issue, he waived it altogether. *People v Adams*, 245 Mich App 226, 240; 627 NW2d 623 (2001).

Defendant argues that there was no need to object to the instruction because "the trial judge already ruled she would give the instruction," and objecting would not "alleviate the damage" incurred by admitting the bad acts. However, it is clear from the trial court's original statement that it would provide a limiting instruction if defendant wanted one, and that it was under the impression that defendant did, in fact, want the jury instructed in this manner. Therefore, defendant intentionally relinquished his ability to raise this issue because he silently condoned the instruction with full knowledge that the trial court believed he wished for it to be provided.

But even if the issue is merely unpreserved, defendant has not demonstrated the existence of a plain error that prejudiced him. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. In order to show that defendant's substantial rights were affected, there must be "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. As such, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks, citation, and brackets omitted).

A criminal defendant has the right to have a properly instructed jury consider the evidence against him. *People v Wood*, 307 Mich App 485, 519; 862 NW2d 7 (2014), vacated in part on other grounds 498 Mich 914 (2015) (quotation marks and citation omitted). "This Court

reviews jury instructions as a whole to determine whether error requiring reversal occurred." *Id*. "The jury instructions must include all elements of the charged offenses, and must not omit material issues, defenses, or theories that the evidence supports." *Id*.

Relevant to the issue, the trial court instructed the jury:

Now you've heard evidence that was introduced to show defendant committed improper acts for which he is not on trial. If you believe this evidence, you must be very careful only to consider it for certain purposes. You may only think about whether this evidence tends to show that the defendant had a reason to commit the crime, that the defendant specifically meant to possess child sexually abusive material, that defendant knew what the things found in his possession were, that the defendant acted purposefully. That is not by accident or mistake or because he misjudged the situation.

That the defendant used a plan, a system or characteristic scheme that he has used before or since. Who committed the crime that the defendant is charged with.

You must not consider this evidence for any other purpose. For example, you must not decide it shows defendant is a bad person or he's likely to commit crimes. You must not convict the defendant here because you think he's guilty of other bad conduct.

The trial court did not plainly err. As explained above, Laity's testimony provided some evidence of other bad acts, and they were properly admitted. Because defendant had a right to have a properly instructed jury consider the evidence against him, he was not denied a fair trial. *Wood*, 307 Mich App at 519. Nor was defendant prejudiced by the alleged error. The trial court limited the jury's use of the evidence, as it specifically instructed the jurors that they could not use the evidence to show defendant's propensity or character. In actuality, of course, the evidence was admissible pursuant to MCL 768.27a, which allowed the jury to consider the evidence for any relevant purpose, including propensity and character. Therefore, not only was defendant not prejudiced, he actually benefited by the trial court's instruction, as it reduced the scope for which the jury could use the evidence.

III. SUFFICIENCY OF THE EVIDENCE

We also disagree with defendant's argument that insufficient evidence existed to show identity, or that he "knowingly possessed" CSAM, because many other people had access to his laptops. Challenges to the sufficiency of the evidence are reviewed de novo. *People v Solloway*, 316 Mich App 174, 180; 891 NW2d 255 (2016). In reviewing the sufficiency of the evidence on appeal, a court should view the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). "[C]ircumstantial evidence and all

reasonable inferences drawn therefrom can constitute satisfactory proof of the crime." *Solloway*, 316 Mich App at 180-181 (citation omitted).

MCL 750.145c(4) provides:

A person who *knowingly possesses* or *knowingly seeks and accesses* any child sexually abusive material is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $10,000.00, or both, if that person knows, has reason to know, or should reasonably be expected to know the child is a child or that the child sexually abusive material includes a child or that the depiction constituting the child sexually abusive material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child. [Emphasis added.]

The term "child sexually abusive material" (i.e., CSAM) is defined in MCL 750.145c(1)(o) as follows:

"Child sexually abusive material" means any depiction, whether made or produced by electronic, mechanical, or other means, including a developed or undeveloped photograph, picture, film, slide, video, electronic visual image, computer diskette, computer or computer-generated image, or picture, or sound recording which is of a child or appears to include a child engaging in a listed sexual act; a book, magazine, computer, computer storage device, or other visual or print or printable medium containing such a photograph, picture, film, slide, video, electronic visual image, computer, or computer-generated image, or picture, or sound recording; or any reproduction, copy, or print of such a photograph, picture, film, slide, video, electronic visual image, book, magazine, computer, or computer-generated image, or picture, other visual or print or printable medium, or sound recording.

Further, "[I]dentity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). To constitute "possession" under MCL 750.145c(4) a person must "knowingly ha[ve] actual physical control or knowingly ha[ve] the power and the intention at a given time to exercise dominion or control" over the CSAM. *People v Flick*, 487 Mich 1, 13; 790 NW2d 295 (2010). Additionally, the possession can be actual or constructive, such that the intention to exercise dominion or control is facilitated either "directly or through another person or persons." *Id*. at 14 (quotation marks and citations omitted). Importantly, possession may be established without *exclusive* dominion or control over the object. *Id*. Further, "[p]ossession can be established with circumstantial or direct evidence, and the ultimate question of possession is a factual inquiry 'to be answered by the jury.'" *Id*. "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Passage*, 277 Mich App 175, 177; 743 NW2d 746 (2007).

As an initial matter, both parties focus on the "knowingly possessed" language of MCL 750.145c(4). Very little, if any, importance is assigned to the language that finds a person guilty of this crime if the person "knowingly seeks and accesses" CSAM, and there was more than enough evidence for the jury to find that defendant did "seek and access" CSAM. Nonetheless,

-6-

when viewing the evidence and reasonable inferences in the light most favorable to the prosecution, a rational finder of fact could determine beyond a reasonable doubt that defendant either (1) knowingly possessed CSAM or (2) knowingly sought and accessed CSAM. See MCL 750.145c(4).

Considering the three images on the Toshiba that were viewed or accessed on the date that the search warrant was executed, ample evidence demonstrates that defendant was the person who viewed or accessed the images. Despite defendant's contention that many people had access to his laptops, defendant and Brandon were the only two people in the house when the charged CSAM was viewed or accessed. Specifically, Brandon testified that he was in his bedroom the entire time that the images were accessed, that he had no reason to use defendant's computer, and that he did not use defendant's computer to view CSAM. That leaves defendant as the only person who could have accessed the CSAM. Notwithstanding the fact that none of the defense witnesses were present at the time of the December 17, 2013 accessing of CSAM, none of them could testify that they had previously used the specific laptops that contained the CSAM, and further, they denied viewing CSAM themselves.

In addition, evidence was revealed that the viewings occurred moments after an e-mail was sent from the Toshiba, and again, only a few minutes after Facebook was accessed, both of which presumably require authentication; thus, circumstantially demonstrating that defendant was operating the Toshiba when the CSAM was assessed. Defendant's arguments that the laptops were not password protected, thus allowing anyone to operate them, and that his employees had access to his social media accounts and email, do not hold much weight given that the viewings occurred at a time when only defendant and his son were in the home.

For these reasons, defendant's identity and involvement in the viewings are amply demonstrated by the evidence. Regarding "possession," the laptops were clearly owned, operated, and "actually" possessed by defendant, with the Toshiba being located at his part-time residence on Sandalwood, while the HP was located at the Wabum house. The "knowingly" aspect of the statute can be demonstrated by the many "affirmative steps" taken by defendant, i.e., the many Internet searches geared towards finding CSAM that were performed on the laptops. See *Flick*, 487 Mich at 16. Although "accidentally view[ing]" CSAM does not demonstrate knowing possession, 69 images were found on the laptops, with six forming the basis for the charges. See *id*. at 19. A reasonable inference from these internet searches and quantity of images possessed is that defendant did not "mistakenly" stumble upon the CSAM. Nonetheless, ultimately, it was up to the jury to determine whether defendant knowingly possessed CSAM. See *id*. at 14. For the very same reasons, it is evident that a reasonable jury could conclude that defendant meets the alternate means to establish guilt, such that defendant "knowingly [sought] and access[ed]" CSAM. See MCL 750.145c(4).[3]

---

[3] Defendant's cursory assertion that the verdict was against the great weight of the evidence is abandoned, as defendant does not identify the issue in his statement of questions involved, nor does he cite any relevant authority for his contention. See MCR 7.212(C)(5); *People v*

## IV. PROPOSED JURY INSTRUCTION

Defendant contends that the trial court erred when it provided the standard jury instruction related to defendant's charges because the instruction failed to properly explain the concept of knowing possession.

"[J]ury instructions that involve questions of law are also reviewed de novo." *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006) (quotation marks and citation omitted; alteration in original). However, "a trial court's determination whether a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *Id.* (quotation marks and citation omitted).

"This Court reviews jury instructions as a whole to determine whether error requiring reversal occurred." *Wood*, 307 Mich App at 519. "The jury instructions must include all elements of the charged offenses, and must not omit material issues, defenses, or theories that the evidence supports." *Id.* "[P]ertinent portions of the [model jury] instructions 'must be given in each action in which jury instructions are given if (a) they are applicable, (b) they accurately state the applicable law, and (c) they are requested by a party.' " *People v Robar*, 321 Mich App 106, 115; 910 NW2d 328 (2017), quoting MCR 2.512(D)(2). Further, the instruction must be made "in an *understandable* manner." *People v Herron*, 464 Mich 593, 607 n 8; 628 NW2d 528 (2001) (emphasis added). "Even if the instructions are somewhat imperfect, reversal is not required as long as they fairly presented the issues to be tried and sufficiently protected the defendant's rights." *People v Aldrich*, 246 Mich App 101, 124; 631 NW2d 67 (2001).

Defendant requested a supplemental, nonstandard juror instruction, which mimics language from *Flick*, 487 Mich 1. Specifically, defendant proposed the following instruction:

DEFINITION OF "KNOWINGLY POSSESS"

(l) In order to prove that the Defendant knowingly possessed the material, the prosecutor must prove that the Defendant had either actual or constructive possession of the material.

(2) For purposes of this element, a Defendant constructively possesses the material when he knowingly has the power and the intention at a given time to exercise dominion or the control over the material either directly or through another person.

The prosecution argued, and the trial court agreed, that the current standard instruction was revised subsequent to *Flick*; accordingly, any necessary and intended changes would have already been included in the updated instruction. Additionally, it concluded that the proposed definition of constructive possession would be confusing to the jury, while also highlighting that

---

*Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004). But even if it was not abandoned, for the reasons outlined in this opinion, his assertion is wrong.

the newer, standard instruction included the word "accessed." As a result, the trial court provided the jury with an instruction similar to the standard jury instruction, M Crim JI 20.83c, stating:

> [T]he defendant is charged with the crime of possessing or accessing child sexually abusive material. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt.
>
> First that the defendant possessed or sought and accessed child sexually abusive materials.
>
> * * *
>
> Child sexually abusive materials are pictures[.]
>
> * * *
>
> That the defendant knew he possessed or knowingly looked for the material.

Taken as a whole, the trial court's instruction properly instructed the jury related to the charge. See *Wood*, 307 Mich App at 519. Defendant's proposed instruction essentially addresses that possession can be actual or constructive, and then further explains the concept of constructive possession. As stated above, defendant had actual possession of the CSAM–that is, the CSAM was located on his laptops, which were located at his residences. Although evidence supported a conclusion that defendant also had constructive possession of CSAM, this was not a required finding to establish that defendant violated the statute. A trial court is only required to give an "applicable" instruction that is understandable, *Robar*, 321 Mich App at 115, and this instruction was. The trial court's instruction provided that in order to establish guilt, the jury must first conclude that defendant "*knew* he possessed or *knowingly* looked" for the CSAM. Although the jury instruction may not have been perfect, it stated the applicable law, considering that constructive possession was not pertinent to the issue. See *id*. The trial court did not abuse its discretion when it determined that the case did not require an expanded definition of constructive possession.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL[4]

Defendant also contends that trial counsel was ineffective for a variety of reasons, largely related to defendant's belief that counsel did not adequately investigate reports produced as a result of the examination of his computers.

---

[4] This Court granted defendant's motion to file a supplemental brief. *People v Skupin*, unpublished order of the Court of Appeals, entered July 24, 2018 (Docket No. 336554). This and the remaining issues were raised in defendant's supplemental brief.

"The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). But because defendant did not seek a new trial or an evidentiary hearing raising these arguments below, relief is precluded "unless the appellate record contains sufficient detail to support the defendant's claim." *Sabin*, 242 Mich App at 658-659. "If review of the record does not support the defendant's claims, he has effectively waived the issue of effective assistance of counsel." *Id.* at 659.

"In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Id.* at 52. Counsel must make a reasonable investigation of the case, or "make a reasonable decision that makes particular investigations unnecessary." *Id.* (quotation marks and citation omitted). Thus, where an attorney "fail[s] to exercise reasonable professional judgment when deciding to forgo particular investigations relevant to the defense, [his or] her representation [falls] below an objective standard of reasonableness." *Id.* at 53.

Most of defendant's arguments stem from a recent letter written by James Carter, an expert in computer forensics. Defendant faults trial counsel for failing to obtain reports that formed the basis of Laity's testimony, and argues that had an expert been consulted, the expert could have advised trial counsel and used these reports to create a more complete timeline of what occurred on December 17, 2013. Defendant posits that counsel's failure to adequately investigate the matter (by obtaining the assistance of an expert) led to counsel failing to fully explore the computer data at trial, failing to adequately cross-examine Laity, failing to obtain the aforementioned report, and failing to impeach Laity regarding what computers containing pornography generally look like. Defendant also contends that counsel was ineffective for failing to impeach Laity regarding the "difficulty of obtaining child pornography without a subscription[,]" an argument that seems to rely on *Flick*.

Almost all of the aforementioned arguments rely on Carter's letter as factual support. This letter was never provided to the trial court, and is thus not part of the appellate record. See MCR 7.210(A)(1). A defendant seeking a new trial on the basis that counsel was ineffective bears the burden of establishing the factual predicate for his argument. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001), citing *People v Hoag*, 460 Mich 1, 6, 594 NW2d 57 (1999). Because Carter's letter is not part of the appellate record, and we denied his motions to remand, defendant must establish the factual predicate for his argument based on the existing record.[5]

---

[5] Defendant moved this Court to remand the matter for an evidentiary hearing so that the record may be expanded, citing his motion to remand filed with his supplemental brief. This Court has

Defendant does present one argument that is not based on Carter's letter. Relying on *Flick*, defendant contends that trial counsel should have impeached the prosecutor's expert "regarding the difficulty of obtaining child pornography without a subscription." Defendant notes that in *Flick*, both defendants admitted to purchasing child pornography online, *Flick*, 487 Mich at 5-8, and that "[n]o such intentional affirmative steps were shown in this case." Precisely what defendant believes to be counsel's error is not clear. It may be that defendant believes trial counsel should have questioned the prosecutor's expert regarding whether defendant purchased any of the pornographic images, but nothing in *Flick* stands for the premise that only purchasing child pornography will suffice for a conviction under the statute.

Finally, as we already mentioned, after *Flick* was decided the Legislature amended the statute to make it a felony to "knowingly possess[] *or knowingly seek*[] *and access*[]" child pornography. MCL 750.145c(4), as enacted by 2012 PA 583 (emphasis added). "Access" is now defined under the statute as "to intentionally cause to be viewed or transmitted to a person." MCL 750.145c(1)(a). Clearly, nothing in the statute requires the purchase of child pornography. Defendant has not shown that counsel was ineffective for failing to question anyone regarding purchasing child pornography on the Internet.

## VI. PROSECUTORIAL ERROR[6]

Defendant has also set forth several assertions of prosecutorial error. As he acknowledges, trial counsel did not object to any of these purported errors below, and thus, his arguments are unpreserved. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Ordinarily, issues of prosecutorial error are reviewed de novo "to determine whether the defendant was denied a fair and impartial trial." *Id*. "[A]llegations of prosecutorial [error] are considered on a case-by-case basis, and the reviewing court must consider the prosecutor's remarks in context." *Id*. But "[u]npreserved issues are reviewed for plain error affecting substantial rights." *Id*.

---

denied that motion. *People v Skupin*, unpublished order of the Court of Appeals, entered November 13, 2018 (Docket No. 336554). After reviewing the record and defendant's new arguments, we remain unconvinced that any further factual development is necessary. An order denying his most recent motion to remand was entered January 9, 2019. *People v Skupin*, unpublished order of the Court of Appeals, entered January 9, 2019 (Docket No. 336554). Carter's letter simply speculates that trial counsel did not obtain certain reports and that had he been consulted and shown the reports, he may have been able to more thoroughly explain the data recovered from defendant's computers, and thereby possibly have uncovered something that would have been helpful to the defense. Carter's letter offers mostly speculation, and does not warrant a remand. See MCR 7.211(C)(1) (explaining that a motion to remand "must be supported by affidavit or offer of proof regarding the facts to be established at a hearing").

[6] Defendant uses the term "prosecutorial misconduct" in his brief. While the term "prosecutorial misconduct" is somewhat of a term of art, the errors alleged by defendant would be better described as alleged instances of prosecutorial error. See *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015).

Defendant first takes umbrage at the prosecutor's use of the word "downloaded" in a question posed to Laity, because use of the word "downloaded" unfairly and incorrectly implied that defendant had affirmatively downloaded the pornographic images at issue, as opposed to merely viewing them, perhaps accidentally. However, after reviewing the entire record, we hold that there was no error. The prosecutor later elicited testimony from Laity describing how temporary Internet files are created. Laity explained that temporary Internet files are automatically created when a webpage is accessed, and that images on a webpage would be stored on the computer's hard drive as temporary Internet files. Laity testified that the images were all found as temporary Internet files on defendant's computers. Thus, the jury would not have come away with the mistaken impression that defendant affirmatively downloaded the images; rather, they would have understood that the storage of the images on the hard drive occurred because the webpages were accessed. There was no prejudice caused by the prosecutor's use of the word "downloaded."

Defendant next argues that the prosecutor committed error by questioning him regarding other images found on his computers. Defendant testified on direct examination that hundreds of people, including his family and employees, had free access to any and all of his computers. On cross-examination, the prosecutor asked if defendant would ever use the computers for an improper purpose. The prosecutor asked defendant if he had ever sent photographs of his own naked body to others, and implied that a substantial number of photographs of defendant's exposed genitals were found on the computers. Defendant's responses were cagey, but he seemingly admitted that such photographs were on the computers, testifying that it he would have taken such photographs if he was in an adult relationship, and "that that [sic] may have happened." Defendant later acknowledged using the computers to view adult pornography.

Precisely what defendant now claims is error in this questioning is not at all clear. But what is clear is that when a defendant chooses to testify, "he does so as any other witness, and within the limits of the appropriate rules he may be cross-examined as to the facts in issue." *People v Clary*, 494 Mich 260, 267; 833 NW2d 308 (2013), quoting *Raffel v US*, 271 US 494, 496-497; 46 S Ct 566; 70 L Ed 1054 (1926). "If, therefore, the questions asked of the defendant were logically relevant, and competent within the scope of the rules of cross-examination, they were proper questions[.]" *Clary*, 494 Mich at 267, quoting *Raffel*, 271 US at 496-497. A defendant may properly be cross-examined regarding his own conduct where that conduct is inconsistent with his direct testimony. *Clary*, 494 Mich at 268. "A prosecutor's good-faith effort to admit evidence does not constitute misconduct." *People v Dobek*, 274 Mich App 58, 70; 732 NW2d 546 (2007). The prosecutor's questions regarding other images found on defendant's computer were clearly asked in order to refute defendant's claims that the computers were open for anyone to use. And based on the testimonial record and defendant's argument on appeal, there is no reason to believe that the prosecutor was not acting in good faith. And, based on that evidence, it would appear that the images were, in fact, on the computer. There is simply no indication in the record that the prosecutor's questioning was improper.

Defendant asks how the prosecutor knew that an e-mail was sent from the laptop, a premise used in a question posed to defendant, and argues that the prosecutor's question was thus improper. It was not. Laity testified that an e-mail, described as a business e-mail to a business client, was sent from the Toshiba at 9:55 a.m. on December 17, 2013. Thus, the evidentiary basis for the prosecutor's question may be derived from Laity's testimony. The same is true of

defendant's arguments that the prosecutor erred by asking defendant to explain how certain improper searches were performed on the computer. While defendant claims that there was no evidentiary basis for this question, Laity testified to discovering the searches when he analyzed the Toshiba laptop.

Because defendant failed to establish a single instance of prosecutorial error, he cannot demonstrate that counsel was ineffective for failing to raise any objections. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## VII. WARRANT AFFIDAVIT

The final issue raised by defendant is that the trial court erred by refusing to suppress evidence obtained through the search warrant because the affidavit supporting the warrant request was not sufficient. "A trial court's ruling on a motion to suppress evidence is reviewed for clear error, but its conclusions of law are reviewed de novo." *Unger*, 278 Mich App at 243. The magistrate's determination of probable cause "should be paid great deference by reviewing courts." *Id*. (quotation marks and citations omitted). "Appellate review of a magistrate's determination whether probable cause exists to support a search warrant involves neither de novo review nor application of an abuse of discretion standard. Rather, the preference for warrants requires the reviewing court to ask only whether a reasonably cautious person could have concluded that there was a substantial basis for the finding of probable cause." *Id*. at 243-244 (quotation marks, ellipses, and citation omitted).

"A search warrant may only be issued upon a showing of probable cause." *Unger*, 278 Mich App at 244. "Probable cause to issue a search warrant exists if there is a substantial basis for inferring a fair probability that contraband or evidence of a crime exists in the stated place." *Id*. "The affidavit underlying the warrant must be read in a common-sense and realistic manner." *Id*. (quotation marks and citation omitted).

The warrant affidavit easily supported issuance of the search warrant. The affidavit, which is 10 pages long, explains various information found as a result of an investigation into defendant's business, "Pay it Forward." This information includes information taken from the website itself, which describes in detail how the business works. The affidavit also included information obtained from state agencies, confirming that defendant had not registered his business as a security. Also included were statements from a confidential informant, who explained her first-hand experience with defendant's business, and how she (and some of her referrals to the business) ended up losing money. It also resulted in a television interview, in which defendant explained his business. The interview was witnessed by a police officer, and after viewing the interview, an investigation into defendant and his business began.

The warrant was clearly sufficient. Pursuant to MCL 451.2301, securities must generally be registered with the state under the Uniform Securities Act. Pursuant to MCL 451.2508, anyone willfully violating the Uniform Securities Act "is guilty of a felony punishable by

imprisonment for not more than 10 years . . . ."[7]  The warrant affidavit asserts that Pay it Forward was not registered as a security with this state or any other state.  MCL 451.2102c(c)(*i*).  The affidavit adequately set forth that defendant was operating an unregistered security, and accordingly, committing a felony.  MCL 451.2102c.

Defendant's remaining arguments attempt to cast doubt on the reliability of the information contained in the affidavit by questioning who, precisely, obtained the information contained in the affidavit.  A common-sense, logical reading of the affidavit is that this information was obtained through the investigation led by the affiant.  Simply put, a common-sense reading of the affidavit easily shows that there was probable cause to believe that defendant was committing a felony through operation of his business.  The trial court did not err by denying the motion to suppress.

Affirmed.


/s/ Christopher M. Murray
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro

---

[7] There are certain exceptions to this rule, none of which are implicated by the present case.  See MCL 451.2508(1).