*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JERELL LEMAR CHAPMAN,

      Defendant-Appellant.

UNPUBLISHED
February 1, 2024

No. 362743
Kent Circuit Court
LC No. 20-008921-FC

Before: REDFORD, P.J., and RIORDAN and FEENEY, JJ.

PER CURIAM.

Defendant, Jerell Lemar Chapman, was convicted after a jury trial of second-degree murder, MCL 750.317; assault with intent to commit murder (AWIM), MCL 750.83; firearm discharge from a vehicle causing death, MCL 750.234a(1)(d); and three counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to serve 30 to 45 years' imprisonment for the second-degree murder conviction, 19 to 30 years' imprisonment for the AWIM conviction, 19 to 30 years' imprisonment for the firearm discharge from a vehicle causing death conviction, and two consecutive years' imprisonment for the felony-firearm convictions. Defendant now appeals by right, arguing that he presented a proper self-defense claim at trial and that there was insufficient evidence presented at trial to show otherwise; that the prosecutor's mention of his postarrest silence led to his convictions; and that he is entitled to resentencing because the trial court's sentencing was unreasonable and disproportionate. For the reasons set forth in this opinion, we affirm defendant's convictions and sentences.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of an incident in which defendant fired multiple shots at the victim's vehicle, killing him instantly, following a verbal altercation with the victim and the victim's friends, JO and AG, at the Rivertown Crossings Mall in Grandville, Michigan.

On October 2, 2020, the victim and his friends JO, AG, and AS drove to the mall in the victim's vehicle to buy a video game at a GameStop store. AS waited in the vehicle while the other three went inside. On the same day, defendant and his girlfriend, KB, drove to the same mall

in Grandville to buy video games at GameStop as well. Defendant and KB entered the store and, after leaving briefly to retrieve their identification to purchase a video game, waited in line for their turn to check out. JO entered the store and waited in line as well while the victim and AG waited outside. While KB was at the register, JO headed toward the store's exit, but then turned around and asked defendant, "Is there a problem?" This verbal altercation escalated until KB had to physically pull defendant away from JO. When defendant and KB exited the GameStop store, JO was waiting for them with the victim and AG. JO asked defendant to come outside and fight. Defendant and KB testified that the three individuals were pushing them to fight and continued to follow them to the parking lot. AG testified that the parties decided to meet at the parking lot across the street away from the surveillance cameras to physically fight. However, defendant denied making any such agreement because he was unfamiliar with the area.

The parties separated and drove away from the mall in their respective vehicles. The understanding of both parties was that there would be a physical fight. The victim, JO, and AG believed that they were following defendant to the designated parking lot. AG and JO both testified that they followed defendant's vehicle until defendant began driving in an unfamiliar direction. At that point, they decided to go home. However, defendant stopped his vehicle parallel with the victim's vehicle. JO and defendant were arguing back and forth, and defendant testified that JO and AG were antagonizing him. Defendant testified that he then saw JO hold up what defendant believed to be a handgun, so he decided to shoot to protect himself and KB. Within seconds, defendant fired eight shots at the victim's vehicle without warning and then drove away. Once AG, JO, and AS realized that the victim was shot and bleeding from his head, they stepped outside the vehicle and tried to get help. An airsoft .177 caliber "BB gun" was found by police on the inside of the front passenger door of the victim's vehicle with an undisturbed candy wrapper on top of it. However, AG, JO, AS, and even KB all denied seeing the BB gun brandished that night.

The minimum sentencing guidelines range for defendant's second-degree murder conviction was 22½ to 37$^1/_2$ years. The trial court began sentencing by stating that the entire incident was "a senseless situation all around" and that "everybody was really I would say complicit at least in this senselessness, or at least how it began." The trial court also recognized that defendant was only 19 years old at the time of the incident. However, the trial court concluded by stating that "whether it's anger, whether it's your background, whether it's your fear, whether it's paranoia, whether it's 19 year old-ism" that caused defendant to shoot and kill the victim, defendant was dangerous, and furthermore, defendant was, at the time of the incident, on probation for shooting someone else. Therefore, the trial court sentenced defendant on the higher end of the minimum sentencing guidelines range to 30 to 45 years in prison for second-degree murder.

Defendant now appeals.

## II. SUFFICIENCY OF EVIDENCE

Defendant argues that he satisfied his burden of showing self-defense and that the prosecution failed to meet its burden of disproving his theory of self-defense beyond a reasonable doubt. We disagree.

Generally, we review "de novo defendant's challenge to the sufficiency of the evidence" and view the evidence "in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt." *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). "But more importantly, '[t]he standard of review is deferential: a reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict.' " *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018), quoting *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). Furthermore, "[c]ircumstantial evidence and reasonable inferences therefrom may be sufficient to prove all the elements of an offense beyond a reasonable doubt." *People v Schumacher*, 276 Mich App 165, 167; 740 NW2d 534 (2007). When reviewing a sufficiency claim on appeal, "we must defer to the fact-finder by drawing all reasonable inferences and resolving credibility conflicts in support of the jury verdict." *Id*.

In a criminal case, the prosecution must introduce "sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748 (1992) (quotation marks and citation omitted). The sufficiency of the evidence is measured by "whether the evidence, taken as a whole, justifies submitting the case to the trier of fact or requires judgment as a matter of law." *People v Clark*, 172 Mich App 1, 6; 432 NW2d 173 (1988). The prosecution is not required to negate "every reasonable theory consistent with innocence" so long as the elements of the offense are proven beyond a reasonable doubt. *Nowack*, 462 Mich at 400.

Self-defense is an applicable defense to murder, manslaughter, and other crimes in which the defendant took reasonable steps to defend himself or herself from an unlawful attack. *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010). The defendant must produce evidence that: (1) he or she honestly and reasonably believed that he or she was in danger; (2) the danger feared was death or serious bodily harm; (3) the action taken was immediately necessary at the time, and (4) the defendant was not the initial aggressor. See *People v Riddle*, 467 Mich 116, 120, 126-127; 649 NW2d 30 (2002). Once the defendant satisfies this burden, the prosecution then bears the burden of "disproving the common law defense of self-defense beyond a reasonable doubt." *People v Reese*, 491 Mich 127, 155; 815 NW2d 85 (2012) (quotation marks and citation omitted).[1]

---

[1] "Under the common law, the affirmative defense of self-defense justified the killing of another person if the defendant honestly and reasonably believes his life is in imminent danger or that there is a threat of serious bodily harm and that it is necessary to exercise deadly force to prevent such harm to himself." *People v Guajardo*, 300 Mich App 26, 35; 832 NW2d 409 (2013) (quotation marks and citations omitted). Implemented in 2006, the Self-Defense Act (SDA), MCL 780.971 *et seq*., "codifie[s] the circumstances in which a person may use deadly force in self-defense or in defense of another person without having the duty to retreat." *Id*. (quotation marks and citation omitted). MCL 780.972(1)(a) of the SDA provides that "[a]n individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if . . . [t]he individual honestly and reasonably believes that the use of deadly force is necessary to

The prosecution presented the audio recording of a phone call that occurred between defendant and KB's grandmother while defendant was imprisoned. In this phone call, KB's grandmother told defendant that if the shooting was done in self-defense, defendant needed to explain to the authorities what happened that evening. Defendant promptly responded that "it had nothing to do with self-defense." This admission strongly undermined his claim of self-defense at trial.

Defendant argues that his short stature and the fact that he was outnumbered and followed show that he honestly and reasonably believed that he was in danger of serious injury or death. However, if true, defendant could have chosen not to engage with JO when first confronted inside the GameStop store. Once JO and the others began following him and KB through the mall, he could have asked for help from mall security or simply stayed inside the mall within the presence of security cameras and the crowds of people. Instead, defendant continued to the parking lot and then agreed to engage in a fistfight at an alternate location without the presence of security cameras. The fact that defendant continued to engage with JO and the others indicates that he did not honestly and reasonably believe that he was in danger of serious injury or death, at least until the shooting itself.

Notwithstanding the sequence of events preceding the shooting, defendant argues that he saw JO lift what he believed to be a handgun, and then he fired a shot at the victim's vehicle in response. It is true that an airsoft BB gun was found in the victim's vehicle and that brandishing it might justify a claim of self-defense. However, no one except defendant testified that the BB gun was brandished that night. Furthermore, the BB gun was found with a candy wrapper on top of it. If JO lifted the BB gun that evening as defendant testified, then after he held it up, he would have had to have placed it back in the compartment and neatly placed the wrapper on top of the BB gun after the chaotic shooting. This scenario seems unlikely, particularly in light of the fact that no one except defendant testified that the BB gun was brandished. Thus, the jury may have reasonably found that that the BB gun was not brandished as defendant testified. We are required to make this inference in favor of the prosecution, see *Schumacher*, 276 Mich App at 167, and conclude that defendant had no lawful basis to shoot at the other vehicle.

Accordingly, there was sufficient evidence presented at trial for a rational trier of fact to find beyond a reasonable doubt that defendant did not act in self-defense. Defendant is not entitled to reversal of his convictions on this basis.

---

prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual."

Defendant argues that he was deprived of due process and his Fifth Amendment right against self-incrimination[2] because the prosecution used his post-*Miranda*[3] silence and request for counsel against him. We disagree.

Constitutional claims are reviewed de novo. *People v Duenaz*, 306 Mich App 85, 90; 854 NW2d 531 (2014). When a preserved, constitutional error is nonstructural in nature, the conviction "should be affirmed if the reviewing court is satisfied that the error is harmless beyond a reasonable doubt." *People v Graves*, 458 Mich 476, 482; 581 NW2d 229 (1998). When a constitutional error occurs during presentation of a case to a jury, the error may be assessed in context of the evidence as a whole to determine whether the error was harmless beyond a reasonable doubt. *People v Anderson*, 446 Mich 392, 405-406; 521 NW2d 538 (1994).

The constitutional privilege against self-incrimination and the right to due process restrict the use of a defendant's silence in a criminal trial. See *People v Clary*, 494 Mich 260, 265; 833 NW2d 308 (2013). This privilege applies when a defendant was subjected to police interrogation while in custody and his silence followed *Miranda* warnings. See *People v Borgne*, 483 Mich 178, 187-188, 191-192; 768 NW2d 290 (2009). "[A] defendant's post-arrest, post-*Miranda* silence cannot be used to impeach a defendant's exculpatory testimony . . . or as direct evidence of defendant's guilt[.]" *People v Shafier*, 483 Mich 205, 213-214; 768 NW2d 305 (2009). However, a single mention of a defendant's post-*Miranda* silence does not automatically entitle him or her to a new trial "if the reference is so minimal that silence was not submitted to the jury as evidence from which it was allowed to draw any permissible inference." *Id*. at 214-215 (cleaned up). That is, reversal may not be warranted so long as the prosecution "does not specifically and expressly attempt to *use* . . . the improper comment to impeach the defendant." *People v Dennis*, 464 Mich 567, 579-580; 628 NW2d 502 (2001) (quotation marks and citation omitted).

*Shafier* listed three factors for us to consider when assessing the prejudicial effect of a prosecutor's use of a defendant's post-*Miranda* silence:

> (1) the extent of the prosecutor's comments, (2) the extent to which the prosecutor attempted to tie defendant's silence to his guilt, and (3) the overall strength of the case against defendant when considered in light of the degree to which the jury's assessment of the evidence might have been affected by the prosecutor's references to defendant's silence. [*Shafier*, 483 Mich at 221.]

In the present case, during cross examination, defendant testified that he did not tell police during his arrest that he was acting in self-defense because: "I did what my father told me to do and that was don't say too much to them. Talk to my lawyers, my attorneys." The prosecutor responded, "Well, why would you have to talk to a lawyer if you were defending yourself?"

---

[2] US Const, Am V; see also Const 1963, art 1, § 17.

[3] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

Defense counsel objected, and the trial court sustained the objection. The prosecution then asked defendant if he was advised of his rights after arrest, and defendant confirmed that he was. The question now is whether the prosecutor's reference to defendant's post-*Miranda* silence deprived him of his constitutional rights.[4]

"[T]he more extensive a prosecutor's references to a defendant's post-arrest, post-*Miranda* silence, the more likely it is that the references had a prejudicial effect." *Id*. at 221-222. In *Shafier*, the Court held that the prosecutor's references had a prejudicial effect because the references were "frequent throughout the trial," including the prosecutor's opening statement and closing argument, as well as his case-in-chief and cross-examination of the defendant. *Id*. at 222. In the present case, in contrast, the prosecutor referred to defendant's silence with a single question, followed by defense counsel's objection, which was sustained by the trial court. The prosecutor did not otherwise mention defendant's post-*Miranda* silence throughout trial. Thus, the extent of the prosecutor's references to defendant's post-*Miranda* silence, as well as her use of that silence to show guilt, was inconsequential and not prejudicial to defendant.

We acknowledge that the reference shed some light on defendant's credibility because it furthered the prosecutor's theory that defendant did not initially act in self-defense and only claimed self-defense as trial approached. However, the reference was "so minimal" that defendant's silence was not submitted to the jury as a means to draw a permissible inference; any inference about whether defendant acted in self-defense was drawn from the ample evidence presented by the prosecution throughout trial. See *id*. at 214-215.

We also note that the evidence against defendant was substantial. None of the eyewitnesses, other than defendant himself, testified that a BB gun was brandished. In addition, the prosecution played a phone call during trial in which defendant explicitly stated that his actions that day were not in self-defense. The strength of this untainted and independent evidence leads to the conclusion that the prosecutor's fleeting reference to defendant's post-*Miranda* silence was harmless.

Accordingly, the prosecutor's reference to defendant's post-*Miranda* silence was harmless beyond a reasonable doubt and did not contribute to his convictions. Defendant is not entitled to relief on this basis.

## IV. SENTENCING

Defendant argues that the sentence imposed by the trial court was unreasonable and disproportionate because the sentencing guidelines did not adequately consider all the important factors surrounding the incident. Therefore, defendant argues, he is entitled to resentencing. We disagree.

We review the trial court's sentencing decision for an abuse of discretion. *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). A trial court abuses its discretion if it imposes

---

[4] The prosecution on appeal acknowledges that the "question about needing a lawyer if he was defending himself" was "concededly improper."

a sentence that "violates the principle of proportionality, which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id.* Sentences that fall within the minimum sentencing guidelines range are entitled to a "nonbinding rebuttable presumption of proportionality" on review by this Court. *People v Posey*, 512 Mich 317, 360; ___NW2d___ (2023).

Although the sentencing guidelines are advisory, trial courts must still consider the guidelines when imposing a sentence. *People v Lockridge*, 498 Mich 358, 391-392; 870 NW2d 502 (2015). When a trial court imposes a sentence that falls within the minimum sentencing guidelines range, that sentence is presumed to be proportionate because it is within the sentencing norm for that offense class. See *Posey*, 512 Mich at 358. However, we must still review the sentence for reasonableness by determining "whether the trial court abused its discretion by violating the 'principle of proportionality' . . . 'which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017), quoting *Milbourn*, 435 Mich at 636. This Court held in *People v Sharp*, 192 Mich App 501, 505; 481 NW2d 773 (1992), that defendants could overcome the presumption of proportionality by presenting evidence of "uncommon" or "rare" circumstances.

Defendant attempts to rebut the presumption of proportionality by arguing that the sentencing guidelines did not adequately consider that: JO, AG, AS, and the victim pursued defendant first; even if defendant was mistaken about the BB gun, defendant made an "impulsive, juvenile mistake driven by fear" by shooting at the victim's car; defendant is young and does not have an extensive criminal history; defendant had a dysfunctional childhood; and defendant was receptive to undertaking treatment and was courteous during these proceedings.

Defendant fails to rebut the presumption of proportionality for the within-guidelines sentence because the trial court fairly considered these factors on the record. The trial court considered the fact that defendant was pursued first:

> And I know that these three men followed you. I saw the video. They followed you and your pregnant girlfriend outside . . . they were egging you on. . . . And everybody was really I would say complicit at least in this senselessness, or at least how it began.

The trial court considered that defendant had a dysfunctional childhood: "And I did get several letters . . . on your behalf from—your father, from some aunts, and other family members. I got the memorandum from the social worker at the Defender's office. And I read it where it really gave an explanation of your—of your background." The trial court also considered defendant's age and lack of criminal history, as well as the fact that the shooting was a senseless mistake:

> But what theme I did see in the letters that I received from your family members and friends of your family is that you're not a monster. . . . You are—you were at the time 19 years old, as [defense counsel] stated. Obviously at 19, most 19 year olds have no foreseeability. . . . I know that if you could do it all over again, that you would not have pulled that trigger.

Finally, the trial court recognized that defendant was receptive to undertaking treatment, but ultimately observed that defendant was "dangerous" at the time: "whether it's anger, whether it's your background, whether it's your fear, whether it's paranoia, whether it's 19 year old-ism, you're dangerous." Considering these facts, the trial court sentenced defendant within the guidelines near the upper end of the minimum sentencing guidelines range for his second-degree murder conviction.

The trial court's sentence was within the minimum sentencing guidelines range and did not violate the principle of proportionality because the trial court considered numerous factors that were not adequately reflected in the guidelines, and defendant failed to show any rare or unusual circumstances. See *Milbourn*, 435 Mich at 636, 661. As the trial court accurately noted, defendant's actions had "permanent consequences." Further, defendant had been convicted of assault with a dangerous weapon and the trial court noted he was on probation at the time for shooting someone else. In other words, not only did defendant shoot and kill the victim, but he did so while being on probation for another improper shooting. Thus, the 30-year minimum sentence was reasonable. Therefore, defendant failed to rebut the presumption of proportionality reserved for his within-guidelines sentence. Defendant is not entitled to resentencing.

## V. CONCLUSION

There were no errors warranting relief. We affirm.

/s/ James Robert Redford
/s/ Michael J. Riordan
/s/ Kathleen A. Feeney

-8-